Maurice B. VerStandig, Esq.
Bar No. MD18071
The Belmont Firm
1050 Connecticut Avenue, NW
Suite 500
Washington, DC 20036
Phone: (202) 991-1101
mac@dcbankruptcy.com
*Counsel for the Debtor*

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| In re: | ) | Case No. 25-184-ELG |
| | ) | (Chapter 11) |
| Swain Landing LaPlata JC, LLC | ) | |
| | ) | |
| Debtor. | ) | |

**MOTION TO FORBEAR FROM OPENING
DEBTOR-IN-POSSESSION BANK ACCOUNT**

Comes now Swain Landing LaPlata JC, LLC ("Swain Landing" or the "Debtor"), pursuant

to Local Rule 9013-1(a), and moves this Honorable Court for leave to forbear from opening a

debtor-in-possession bank account (a "DIP Account"), and in support thereof states as follows:

**I.      Introduction**

At the time Swain Landing petitioned for chapter 11 relief, the Debtor—quite literally—

had no assets. This is a case built around a preference claim that, as a matter of law, did not accrue

until Swain Landing entered Subchapter V. And this is, accordingly, a somewhat unconventional

reorganizational proceeding—not in the sense that the Debtor brings controversy to the fore, looks

to exploit any legal loopholes, or even endeavors to expand upon existing precedent. This is an

unconventional proceeding, rather, in the sense that Swain Landing currently stands at the

fiduciary helm of an estate populated only by the sounds emanating from a tree fallen in the woods

whilst no persons were present. The Debtor did not own real estate on the petition date, did not

1

hold the title to a vehicle, did not lay claim to any personal property and, most pertinently, did not possess any cash or cash equivalents.

In this *sui generis* construct, Swain Landing is not required—and should not be compelled—to open a DIP Account. Where, as here, a Debtor has no funds to deposit, the creation of such an account is not only an incongruous formality but, too, something of an impossibility—after all, Swain Landing cannot much represent to a bank that funds would anytime soon populate a DIP Account even if opened.

For these reasons, and as extrapolated upon *infra*, the Debtor respectfully moves to be relieved from this rigor, to whatever extent the rigor may be extant.

**II.      Argument: Swain Landing Should Not be Required to Open a DIP Account**

DIP Accounts outwardly exist to ensure a bankruptcy estate not be victimized by the failure of a bank. It is altogether sensible that a debtor's estate not suffer if either (i) an uninsured financial institution collapses; or (ii) deposits in excess of $250,000.00 pend when an otherwise-insured institution is seized by regulators. And DIP Accounts do, too, furnish important insight and reporting tools to the United States Trustee, adding a valuable layer of oversight to estates so often helmed by the individuals whose actions beget insolvency in the first instance. Yet where, as here, the Debtor is without any cash or cash equivalents, and holds no receivables prone to anytime soon be converted into cash or cash equivalents, the opening of a DIP Account would be an exercise in form over substance—and a potentially beleaguered exercise at that.

The Bankruptcy Code does not actually mandate that debtors open new bank accounts upon filing petitions for relief, instead requiring only:

> Except with respect to a deposit or investment that is insured or guaranteed by the United States or by a department, agency, or instrumentality of the United States or backed by the full faith and credit of the United States, **the trustee shall require from an entity with which such money is deposited or invested**—

(1) a bond—

(A) in favor of the United States;

(B) secured by the undertaking of a corporate surety approved by the United States trustee for the district in which the case is pending; and

(C) conditioned on—

(i) a proper accounting for all money so deposited or invested and for any return on such money;

(ii) prompt repayment of such money and return; and

(iii) faithful performance of duties as a depository; or

(2) the deposit of securities of the kind specified in section 9303 of title 31;

unless the court for cause orders otherwise…

11 U.S.C. § 345(b) (emphasis added).

The Operating Guidelines and Reporting Requirements of the United States Trustee (the "UST Guidelines"), however, go a step further, requiring, *inter alia*, "[t]he debtor must immediately close pre petition bank accounts and open new 'debtor in possession' bank accounts. All receipts must flow through the debtor in possession account(s). All disbursements should be by check." UST Guidelines, p. 3, § II(A)(1).

Under a plain reading of Section 345, debtor monies must either (i) be placed in a DIP Account; or (ii) otherwise be "insured or guaranteed by the United States or by a department, agency, or instrumentality of the United States." And while the latter clause periodically invites notation that DIP Accounts are not necessary where a Debtor's deposits sit well below the threshold for Federal Deposit Insurance Corporation insurance, such is immaterial *sub judice* as the Debtor simply does not have monies to either place in an FDIC-insured account or a DIP Account.

3

To be sure, nothing in Section 345 requires a debtor to open a DIP Account. That code provision, rather, simply makes clear that entities holding deposits of a debtor-in-possession must, in turn, comply with certain exacting rigors. Yet here, there are no entities or institutions holding deposits of Swain Landing for the simple reason that Swain Landing currently is—and at all times since petitioning for chapter 11 relief has been—without any money to deposit.

Nor does Swain Landing conduct the variety of business for which post-petition receipts are anticipated. The Debtor does not currently hold any accounts or notes receivable, does not currently interface with any fee-paying members of the public, and does not have a business plan that is susceptible to the receipt of money at any juncture before the intentionally-expedient provisions of Subchapter V serve to usher Swain Landing out of bankruptcy. The Debtor is a real estate developer that lost its real estate pre-petition and that will need the real estate to be annexed into a municipality, once reclaimed through an avoidance action, before any monies may begin to flow from the development thereof.

For want of ambiguity, if Swain Landing is suddenly imbued with funds for some unforeseen reason, the Debtor will promptly open a DIP Account to receive such monies. The Debtor does *not* seek to hold any monies outside of a DIP Account. But for so long as it appears the Debtor is unlikely to hold monies while endeavoring to reorganize, governing law well dictates the Debtor ought not be compelled to nonetheless open a depository account.

## III.    Conclusion

WHEREFORE, the Debtor respectfully prays this Honorable Court (i) relieve Swain Landing of any obligation to open a DIP Account unless and until Swain Landing comes into possession of monies; and (ii) afford such other and further relief as may be just and proper.

*[Signature on Following Page]*

4

Respectfully submitted,

Dated: June 15, 2025         By:   /s/ Maurice B. VerStandig
                                   Maurice B. VerStandig, Esq.
                                   Bar No. MD18071
                                   The Belmont Firm
                                   1050 Connecticut Avenue, NW
                                   Suite 500
                                   Washington, DC 20036
                                   Phone: (202) 991-1101
                                   mac@dcbankruptcy.com
                                   *Counsel for the Debtor*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 15th day of June, 2025, a copy of the foregoing was served electronically upon filing via the ECF system, with copies being sent to all parties receiving electronic notice herein.

                                   /s/ Maurice B. VerStandig
                                   Maurice B. VerStandig