Maurice B. VerStandig, Esq.
Bar No. MD18071
The Belmont Firm
1050 Connecticut Avenue, NW
Suite 500
Washington, DC 20036
Phone: (202) 991-1101
mac@dcbankruptcy.com
*Counsel for the Debtor*

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| In re: | ) | Case No. 25-184-ELG |
| | ) | (Chapter 11) |
| Swain Landing LaPlata JC, LLC | ) | |
| | ) | |
| Debtor. | ) | |

## REPORT PURSUANT TO 11 U.S.C. § 1188

Comes now Swain Landing LaPlata JC, LLC ("Swain Landing" or the "Debtor"), by and through undersigned counsel, pursuant to Section 1188 of Title 11 of the United States Code, and reports as follows:

### I.    Introduction

Despite a few admittedly-exotic eccentricities, this case should actually proceed in a relatively simple manner. Swain Landing enters bankruptcy endeavoring to use a preference action to avoid the loss of its singular asset, whilst simultaneously tending to litigation brought by an equity holder purporting to also be a creditor. The former adversary proceeding, while no doubt a touch quirky, is likely to prove uncontroversial; the latter adversary proceeding portends a more vexatious horizon but, importantly, one that is unlikely to obstruct plan confirmation.

### II.    Debtor Background

Swain Landing was formed in early January 2022, for the sole purpose of acquiring a parcel of real estate in Maryland (the "Real Estate"). In a fairly ho-hum transaction, the Debtor purchased

1

the land and the sellers (the "Swains") received some cash at closing whilst also taking back a promissory note. Unfortunately, though, various developmental roadblocks soon emerged, as Swain Landing saw its primary investor lose interest in ongoing financial support whilst, somewhat simultaneously, the Debtor began encountering the layers of red tape that so often encompass comparable projects.

Somewhat peculiarly, the Swains—upon the occurrence of a default on the note they hold—did not endeavor to foreclose but, rather, sued for recission of the entire transaction. The Debtor still does not know all the details of this former litigation, but is aware that on March 19, 2025 an order of recission was entered in state court. There is a lot that is strange about this—not the least of which being that the recission order does not require a return of the monies paid to the Swains by the Debtor—but, equally, it is confidently believed the recission order is avoidable under Section 547 of Title 11 of the United States Code. Rather promptly, upon seeking chapter 11 relief, Swain Landing filed an appropriate adversary proceeding. Summonses have now been served and it remains to be seen whether or not a defense is to be mounted.

If the loss of the Real Estate can be avoided, the Debtor will be able to develop the parcel on a normal timeline. There is already a contract in place—disclosed on Schedule G—with a reputable home builder. The process is unlikely to be relaxed, easy or burden-free, but Swain Landing is confident in asserting that the Real Estate—once returned—can be strategically developed in a manner that will benefit creditors and equity holders alike.

The perhaps trickier part of this case concerns a state court suit filed by Claudia Engelhorn in her capacity as trustee of the Whitewater Revocable Trust Dated September 30, 2021, and White Pearl, LLC (the "Engelhorn Litigation"). Pertinently, that litigation concerns efforts to assert and collect a $585,000.00 claim against Swain Landing and, too, to secure a judicial decree dissolving

Swain Landing. One of the plaintiffs therein is the aforementioned equity holder who is now endeavoring to also masquerade as a creditor; the standing of the other plaintiff is at-best unclear.

Post-petition, the Engelhorn Litigation has been removed to the United States Bankruptcy Court for the District of Maryland, where a motion to transfer venue to this Honorable Court was promptly filed upon removal. Unfortunately, the plaintiffs in that action are endeavoring to obstruct a transfer of venue—despite the Engelhorn Litigation being removed solely because of the pendency of this very bankruptcy case—and, as such, Judge Rice has now scheduled an in-person hearing on the motion to transfer venue for August 4, 2025.

To be sure, Swain Landing is confident the Engelhorn Litigation will be transferred to this Honorable Court, insofar as there exists a healthy line of seemingly-uninterrupted case law standing for the proposition that an adversary proceeding and a main case ought to proceed in the same venue. Regrettably, however, the plaintiffs' efforts to obstruct such have now invited delay and, no doubt, will also soon invite the incursion of unnecessary legal fees attendant to preparing for and attending an in-person hearing Baltimore. In the prism of a Subchapter V case, which is designed to operate both expeditiously and inexpensively, the intransigence of the state court plaintiffs is deeply unfortunate. Swain Landing hopes such does not serve as a harbinger of obstructionist efforts to come but, alas, the Debtor is also well prepared to fend off any such counterproductive measures should the need so arise.

### III.  Plan Formation

Swain Landing anticipates filing a perfectly predictable plan in this case. The Debtor will regain its title to the Real Estate through the avoidance action, work to develop the same through some blend of post-confirmation debt and equity offerings, will use the proceeds to pay allowed claims, and will take pride in having worked to address the very real housing needs of a suburban

community. Notwithstanding the delays invited by Ms. Engelhorn and White Pearl, LLC, the Debtor believes this plan can be timely docketed within 90 days of the petition date and, equally, that the plan can be confirmed on an ordinary timeline thereafter. Importantly, the removed litigation does *not* need to be resolved before plan confirmation; Swain Landing will make allowances in its plan based upon the various outcomes that litigation may ultimately invite (including one where the Debtor is awarded its attorneys' fees for being made to defend the seemingly-meritless broadside by a plaintiff that somehow feigns to be able to transmute an equity position into a debt obligation).

Swain Landing does not, however, anticipate the plan will be consensual in nature. Two putative creditors have launched scorched earth litigation and are actively campaigning to keep a removed case away from this Honorable Court. The other notable creditors will be the Swains who, logic dictates, may be unlikely to support a plan built around the successful avoidance of their state court recission judgment.

So while Hope is not merely a town in Arkansas, and efforts will be made to work with counsel for creditors to form a consensual plan, Swain Landing is also keenly aware of the unlikelihood of such efforts proving successful. More likely than not, a plan elaborating on the aforementioned concepts will be proposed, will encounter opposition, and will come on for confirmation with the Debtor needing to make the requisite showing of fairness and equity. Swain Landing is confident such a showing can and will be made, but the Debtor also respects the process that necessarily underlies such.

*[Signature on Following Page]*

|  |  |  |
|---|---|---|
|  |  | Respectfully submitted, |
| Dated: July 7, 2025 | By: | /s/ Maurice B. VerStandig |
|  |  | Maurice B. VerStandig, Esq. |
|  |  | Bar No. MD18071 |
|  |  | The Belmont Firm |
|  |  | 1050 Connecticut Avenue, NW |
|  |  | Suite 500 |
|  |  | Washington, DC 20036 |
|  |  | Phone: (202) 991-1101 |
|  |  | mac@dcbankruptcy.com |
|  |  | *Counsel for the Debtor* |

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 7th day of July, 2025, a copy of the foregoing was served electronically upon filing via the ECF system, with copies being sent to all parties receiving electronic notice herein.

/s/ Maurice B. VerStandig
Maurice B. VerStandig