Sam J. Alberts (DC Bar # 443260)
David F. Cook (DC Bar #1708239))
DENTONS US LLP
1900 K Street, NW
Washington, DC 20006
Tel: (202) 408-7004
Email: sam.alberts@dentons.com

Wes P. Henderson, Esq. (DC Bar #502935)
Patrick D. Gardiner, Esq. (DC Bar #1630864)
HENDERSON LAW, LLC
2127 Espey Court, Suite 204
Crofton, Maryland 21114
T: (410) 721-1979
F: (410) 721-2258
Email: wph@hendersonlawllc.com
Email:  patrick@hendersonlawllc.com

*Co-Counsel for Claudia Engelhorn,
Individually and on behalf of the Whitewater Revocable Trust,
and White Pearl, LLC*

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| In re:<br><br>Swain Landing LaPlata JC, LLC<br><br>Debtor. | Case No. 25-184-ELG<br><br>Chapter 11 |

**MOTION TO DISMISS THE BANKRUPTCY CASE**

Creditors and parties in interest, Claudia Engelhorn ("Ms. Engelhorn"), individually and as Trustee of the Whitewater Revocable Trust dated September 30, 2021, as amended (the "Trust"), and White Pearl, LLC (collectively "Movants"), hereby file this *Motion to Dismiss the Bankruptcy Case* (the "Motion to Dismiss"). In support of the Motion to Dismiss, the Movants rely on the *Declaration of Claudia Engelhorn in Support of the Motion to Dismiss the Bankruptcy Case* (the "Declaration") attached hereto as **Exhibit A** and state as follows:

**PRELIMINARY STATEMENT**

This Court should dismiss this bankruptcy case for at least two, straight-forward reasons: lack of corporate authority and failure to meet the requirement of Subchapter V because the Debtor is not engaged in an active business.

First, the Debtor — a delisted Maryland limited liability company - did not have legal authority to file this bankruptcy. Maryland limited liability company law dictates that a bankruptcy petition must be filed with the unanimous consent of the members. Movant Movant the Trust, a 50% member of the Debtor, never consented to the filing of the Petition. Declaration ¶ 5. Ms. Engelhorn as trustee of the Trust never executed the operating agreement upon which the Debtor asserts was the authorizing document for this filing. Declaration ¶¶ 4,7. While the Debtor's Operating Agreement identifies the Trust as the 50% member, the Debtor's Petition identifies White Pearl, LLC as said 50% member. Irrespective, Ms. Engelhorn did not authorize the filing of this bankruptcy in her capacity as the managing member of White Pearl, LLC either. Declaration ¶ 8. As such, the bankruptcy filing occurred without legal authority. Because there was no legal authority for the Debtor to file for bankruptcy and such authority will not be granted by Ms. Engelhorn (either on behalf of the Trust or White Pearl, LLC) in the future, the Court should dismiss this bankruptcy case promptly and with prejudice.

Second, dismissal is warranted because this bankruptcy case was filed without meeting the necessary requirements to proceed as a small business debtor under subchapter V of the Bankruptcy Code. By the Debtor's own admissions, it has not been conducting business, thereby making the Debtor ineligible as a small business debtor under Subchapter V.

Although either ground is sufficient, dismissal may also be justified based on improper venue. It is without legitimate dispute that the Debtor is not licensed, incorporated, or doing

2

business in Washington, D.C. To the contrary, it was incorporated in Maryland until it was delisted in 2024. *See* **Exhibit B**. The Debtor's only known asset is an alleged interest in real estate that is in Maryland. *See* Schedule A/B Part 9. And, despite claiming to be a "citizen" with a "principal place of business" in Washington, DC,[1] the DC Secretary of State has no record of the Debtor either incorporating or being licensed to do business in Washington, D.C. *See Declaration of Patrick Gardiner*, attached hereto as **Exhibit C**.

Moreover, there is a serious issue of Debtor bad faith. This bankruptcy case appears aimed at manufacturing jurisdiction to create causes of action and to transfer to this Court civil litigation that was filed in 2024 and is pending in Baltimore City Circuit Court (Maryland) to which Movants are plaintiffs and the Debtor is just one of several defendants. After filing this bankruptcy case, the Debtor opened an adversary proceeding in the Maryland Bankruptcy Court (without an underlying Maryland Bankruptcy case) in an effort to remove and then transfer the Maryland Civil Litigation to this Court.

Due to the existence of the automatic stay that halted the Maryland Civil Litigation against the Debtor, one must wonder why this Debtor would expend resources to transfer that litigation to this Court; that is, unless the goal is to frustrate and forum shop the entire Maryland Civil Litigation to advantage one or more codefendants, including a codefendant that may be financing this bankruptcy case either directly or through an affiliate.[2] If so, dismissal is warranted on the basis of bad faith too. For these and other reasons noted below, the Court should dismiss this Bankruptcy Case with prejudice.

---

[1] *See* Complaint filed in *Swain Landing la Plata JC, LLC v. Swain and Swain*, Adv. Pro. No. 25-10013, filed in this bankruptcy case.

[2] Given the Debtor admittedly has no cash, it is legitimate to discover who is financing this case and the adversary proceeding in Maryland. Schedule A/B Part 1.

3

## BACKGROUND

**A.    General Background**

1.     On May 15, 2025 (the "Petition Date"), Swain Landing LaPlata JC, LLC (the "Debtor") filed for voluntary relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Columbia (the "Court"), designated itself a "small business debtor" as that term is defined in 11 U.S.C. § 101(51D) and elected to proceed under subchapter V of chapter 11 of the Bankruptcy Code. References to the docket in the Bankruptcy Case are "DC Dkt. No."

**B.    Circuit Court Action**

2.     On September 10, 2024, Movants filed a complaint ("Complaint") in the Circuit Court for Baltimore City, Maryland (the "Circuit Court"), designated as case number C-24-CV-002631 (the "Circuit Court Action"). A copy of the docket in the Circuit Court Action is attached hereto as **Exhibit D**.

3.     As set forth in the Complaint (which was amended) (the "Amended Complaint"),[3] the Circuit Court Action stems primarily from the conduct of Erik D. Bolog ("Mr. Bolog"), who was Ms. Engelhorn's former attorney, trustee, confidant, advisor, and friend. Ex. E at ¶¶ 7, 10. It is alleged that while Mr. Bolog was employed by law firm (Whiteford, Taylor & Preston, LLP ("WTP")) and acting within the course and scope of his employment with WTP, and with the aid of his friends, engaged in multiple instances of intentional misconduct wherein he used the Plaintiffs' assets to enrich himself, his business ventures, enrich his friends, and billed the Plaintiffs for his and other WTP employees' time and expenses while doing so. Ex. E at  Once Mr. Bolog's

---

[3] A copy of the Amended Complaint is attached hereto as **Exhibit E**

4

misconduct was highlighted for WTP's management, they investigated Mr. Bolog's actions, uncovered misconduct, and terminated him.

4. It is alleged that Mr. Bolog's misconduct can be delineated into subcategories: (1) a Fraudulent $10 Million "Gift" to the JAREB Irrevocable Trust ; (2) embezzlement to save Mr. Bolog and Michael Postal ("Mr. Postal")'s investment in the Science Park Property; (3) fraud and embezzlement into Mr. Bolog's company, Darnestown Road, Inc.; and (4) embezzlement and fraud related to the Debtor. Ex. E at  Hereinafter, Mr. Bolog, individually, and as Trustee of the JAREB Irrevocable Trust, Science Park Associates, LLC, and Darnestown Road, Inc., shall be referred to as "Bolog Defendants."

5. The Debtor is a named defendant in the Circuit Court Action because certain funds of Ms. Engelhorn and other plaintiffs were transferred to the Debtor prepetition and served as the funding source for a portion of the purchase of real property located in Maryland that the Debtor claims an ownership interest. As addressed herein in more detail, based upon the Debtor's own admissions, the Debtor does not engage in commercial business activity. Moreover, the Debtor is legally precluded from conducting business in the State of Maryland as it is a forfeited entity. *See* Md. Code, Corps. & Ass'ns § 4A-919.

6. The Circuit Court Action has been active and has included, among other things, a demand by Defendants to compel arbitration, which was denied by the Circuit Court. *See* Ex. D.

7. Plaintiffs also successfully overcame motions to dismiss filed by certain Defendants. *See* Ex. D.

8. In the early Spring of 2025, certain Defendants failed to respond to Plaintiffs' discovery requests, and the Court granted a Motion to Compel their discovery responses and document production. *See id*.

5

9. On March 24, 2025, Mr. Bolog, Science Park, and Darnestown filed a Counterclaim against Claudia Engelhorn, individually, and as Trustee of the Whitewater Revocable Trust Dated September 30, 2021. *See id*.

10. On April 22, 2025, Counter-Defendants filed a Motion to Dismiss the Counterclaim. *See id*. That motion remains pending.

11. On May 23, 2025, Plaintiffs filed a motion for sanctions against the Bolog Defendants for their failure to comply with the Circuit Court's order compelling production of discovery materials on May 23, 2025. The Circuit Court did not rule on the motion for sanctions prior to the removal of the Circuit Court action. The Bolog Defendants have still not produced the required documents.

12. On the Petition Date, the Debtor filed a notice of bankruptcy in the Circuit Court. *See id*. Based upon this notice, the Circuit Court stayed the Circuit Court Action as to the Debtor. *See id*.

**C.    The Maryland Adversary Proceeding and Efforts to Transfer the Circuit Court Action to the DC Bankruptcy Court**

13. On June 10, 2025, the Debtor filed an adversary proceeding designated as Adv. Pro. Number 25-00159 ("Md. Adv. Pro.") along with a notice of removal ("Removal Notice") in the United States Bankruptcy Court for the District of Maryland (the "Maryland Bankruptcy Court"). A copy of the Adversary Proceeding docket, heretofore referred to as Md. Adv. Pro. Dkt., is attached as **Exhibit F**. Notably, there is no underlying bankruptcy case filed by the Debtor in Maryland.

14. On that same date, the Debtor filed a motion to transfer venue of the Circuit Court Action to this Court (the "Venue Transfer Motion").

6

15. On June 12, 2025, the Maryland Bankruptcy Court entered an order of removal and set a scheduling conference on the issue of removal to begin on July 17, 2025. Md. Adv. Pro. Dkt. No. 5. The scheduling conference has reset to a date in August 2025.

16. On June 24, 2025, the Movants filed an objection to the Venue Transfer Motion ("Venue Transfer Objection"). Md. Adv. Proc. Dkt. No. 15. In it, the Movants noted it would likely seek remand of the Civil Action to the Circuit Court and may seek additional relief.

17. On June 26, 2025, the Maryland Bankruptcy Court set a hearing on the Venue Transfer Motion and related pleadings for August 4, 2025 at 1:30 PM.

18. On July 10, 2025, the Movants filed a motion for abstention and to remand with respect to the removed Circuit Court Complaint.

## ARGUMENT

**A.     The Debtor did not Have Authority to File the Petition Pursuant to Maryland Law.**

19. The Debtor did not have authority to seek bankruptcy protection and does not have authority to remain a debtor because applicable Maryland law does not permit it. "Under longstanding Supreme Court precedent, state law dictates the procedures a corporation must follow to authorize a bankruptcy filing." *In re Franchise Servs. of N. Am., Inc.*, 891 F.3d 198, 202 (5th Cir. 2018). Bankruptcy cases begin when either an eligible debtor files a voluntary petition or creditors file an involuntary petition against the debtor. *Id*. at 206. A voluntary case begins when an "entity that may be a debtor" files a bankruptcy petition. 11 U.S.C. § 303(a). Corporations are entities that may be debtors and may file voluntary petitions for relief under chapters 7 or 11 of the Bankruptcy Code. 11 U.S.C. § 109(a)-(b), (d). Although a corporation may be an eligible debtor under the Bankruptcy Code, the corporation cannot act on its own and can act only if authorized by appropriate agents. *Id*. (referencing *W.G. Yates & Sons Const. Co. Inc. v. Occupational Safety & Health Review Comm'n*, 459 F.3d 604, 607 (5th Cir. 2006)). The

Bankruptcy Code does not provide instruction on who may authorize a corporate entity's petition filing; it merely provides that only an entity that may be a debtor may initiate a voluntary bankruptcy case. 11 U.S.C. § 301(a).

20. State law determines who has the authority to file a voluntary petition on behalf of a corporation. *Price v. Gurney*, 324 U.S. 100, 106–07 (1945). *See also, e.g.*, *In re Orchard at Hansen Park, LLC*, 347 B.R. 822 (Bankr. N.D. Tex. 2006) (looking to state law and the LLC's operating agreement to determine that an LLC's bankruptcy petition was not properly authorized); *In re Delta Starr Broadcasting, L.L.C.*, 2006 WL 285974 (E.D. La. Feb. 6, 2006) (looking to state law to reverse a bankruptcy court determination that an LLC's bankruptcy petition was not properly authorized); *In re Real Homes, LLC*, 2005 WL 4705262 (Bankr. D. Idaho Nov. 25, 2005) (in approving a motion to dismiss a Chapter 11 case due to lack of proof that bankruptcy filing for an LLC was not authorized, the court found that authority to file a voluntary bankruptcy petition for an LLC must be authorized under state law); *In re Green Power Kenansville, LLC*, Case No. 04-08384-8-JRL (Bankr. E.D.N.C. Nov. 18, 2004) (in granting a motion to dismiss, court looked to state law and the LLC's operating agreement to determine that an LLC's bankruptcy petition was not properly authorized); *In re J&J Property Holdings, LLC*, 2004 WL 4040542 (Bankr. N.D. Ga. Jan. 20, 2004) (in granting a motion to dismiss, court looked to provisions of an LLC's operating agreement to determine that an LLC's bankruptcy petition was not properly authorized); *In re Avalon Hotel Partners, LLC*, 302 B.R. 377, 380 (Bankr. D. Oregon 2003) (stating that "whether a business entity properly is authorized to file a bankruptcy petition is a matter determined under state law" and examining Oregon state law and the operating agreement of an Oregon LLC in considering whether its bankruptcy petition was properly authorized); *In re DeLuca*, 194 B.R. 79, 87 n.12 (Bankr. E.D. Va. 1996) (stating that the manager of the LLC had no authority to file

voluntary bankruptcy petition for the LLC because "it is clear that the decision to file a chapter 11 petition was a 'major decision' [as defined in the LLC's operating agreement] that required the vote of the members . . . ." (citing *In re Old Grind Co.*, 99 B.R. 317 (Bankr. W.D. Va. 1989), which held that state law gave no authority to a president to file Chapter 11 on behalf of a corporation)).

21. A bankruptcy court must dismiss a corporate entity's petition if the corporation acted without proper authorization under state law. *In re Franchise Servs. of N. Am. Inc.*, 891 F.3d at 206–07 (citing *Price*, 324 U.S. at 106). The Supreme Court underscores that "[i]t is not enough that those who seek to speak for the corporation may have the right to obtain that authority," but rather, those seeking to act for the corporation in filing a bankruptcy petition must have the actual authority at the time of filing. *Price*, 324 U.S. at 106-07. In the absence of a duly filed petition, the bankruptcy court must dismiss the petition because it lacks power "to shift the management of a corporation from one group to another, to settle intracorporate disputes, and to adjust intracorporate claims." *Id*.

22. The Petition claims that Mr. Postal, as a manager, was given the authority to file the Petition pursuant to the Operating Agreement at Article VI, which governs the rights, powers, and duties of the manager of the Debtor. A true and correct copy of the purported Operating Agreement is attached hereto as **Exhibit G**.

23. Notably absent from Article VI is the express authority to file a bankruptcy petition, but even this point is rendered moot by the fact that no representative of the Trust or White Pearl, LLC, signed the Operating Agreement.

24. As the Declaration outlines, the Operating Agreement was never agreed to by Ms. Engelhorn or any representative of the Trust and was certainly not signed by her or any

9

representative of the Trust. Moreover, it is White Pearl, LLC, and not the Trust, that holds the 50% membership interest, and White Pearl, LLC did not sign the Operating Agreement.

25. Given this fundamental flaw in the Operating Agreement, it is not a controlling document and should be given no weight or authority. In this instance, Maryland law should control who had the authority to file the Petition.

26. Under Maryland Code, Corporations and Associations, § 4A-403, "A member [of an LLC] may not take any of the following actions without unanimous consent of the members: (i) institute a voluntary proceeding under the federal bankruptcy code." MD Code, Corps. & Ass'ns, § 4A-403(d)(2)(i). Moreover, Maryland law requires unanimous consent to be in writing. *Id.* at § 4A-404(1) ("Wherever this title requires the unanimous consent of the members to allow the limited liability company to act: (1) The consent shall be in writing").

27. Where a debtor cannot show that it has the required authority to file a bankruptcy petition, the petition should be dismissed. *See, e.g.*, *In re Orchard at Hansen Park, LLC*, 347 B.R. 822, 827 (Bankr. N.D.Tex. 2006) (holding that state law and the operating agreement required unanimous consent of all LLC members to file bankruptcy and because no writing indicated unanimous consent, the bankruptcy case was dismissed); *In re 301 W North Avenue, LLC*, 666 B.R. 583, 595 (Bankr. N.D.Ill. 2025) (holding that a debtor was not authorized to file a bankruptcy petition where it did not have written consent to file from all members of the LLC, including the independent manager and granting dismissal of the bankruptcy petition); *In re Karben4 Brewing, LLC*, 661 B.R. 392, 401 (Bankr. W.D.Wis. 2024) (dismissed bankruptcy petition where an operating agreement required majority of LLC's members' consent to filing, which was not obtained).

10

28. No writing exits here to show unanimous consent and, in fact, the Movants *did not* consent to the filing of this chapter 11 case. Accordingly, the Petition was not properly authorized and should be dismissed, with prejudice.

**B. The Debtor Does Not Meet the Definition of a "Small Business Debtor" as Defined in 11 U.S.C. § 101(51D).**

29. The Petition asserts that the Debtor is a "small business debtor" as defined in 11 U.S.C. § 101(51D). DC Dkt. No 1.

30. As defined in the Bankruptcy Code, a "small business debtor" is one that, *inter alia*, is "engaged in commercial or business activities…" 11 U.S.C. § 101(51D).

31. The majority of courts that have considered the issue have determined that "engaged in commercial or business activities" means *currently* engaged in such activities or engaged in such activities up until the petition date. *See e.g.*, *National Loan Investors, L.P. v. Rickerson (In re Rickerson)*, 2021 WL 5905974, at *6 (Bankr. W.D. Pa. Dec. 14, 2021) (concluding that Subchapter V requires that the debtor is currently engaged in business or commercial activities); *In re Port Arthur Steam Energy, L.P.*, 629 B.R. 233, 238 (Bankr. S.D. Tex. 2021) (holding that collecting accounts receivable and maintaining corporate physical assets qualify as being engaged in commercial activities, even when the historical business is no longer operating); *In re Blue*, 2021 WL 1964085, at *6 (Bankr. M.D.N.C. May 7, 2021) (finding the Subchapter V debtor must be "presently engaged in commercial or business activities"); *In re Offer Space, LLC*, 2021 WL 1582625, at *4 (Bankr. D. Ut. Apr. 22, 2021) (finding the subchapter V debtor must be "currently" not formerly engaged in business); *In re Johnson*, 2021 WL 825156 (Bankr. N.D. Tex. March 1, 2021) (finding the term engaged means "a person occupied with or busy in commercial or business activities – not a person who at some point in the past had such involvement" and therefore the debtor was ineligible to be a small business debtor under

11

Subchapter V); *In re Ikalowych*, 2021 WL 1433241, at *13 (Bankr. D. Colo. Apr, 15, 2021) (determining that currently engaged encompasses "immediately preceding and subsequent to the petition date); *In re Thurmon*, 625 B.R. 417 (W.D. Mo. 2020) (holding that debtors must be currently engaged in business to qualify for reorganization under Subchapter V of Chapter 11).

32. The minority view does not require that a debtor be currently engaged in commercial or business activities. A decision from the US Bankruptcy Court for the District of South Carolina held that an individual debtor was eligible for treatment as a small business debtor because he was "engaged in commercial or business activities by addressing residual business debt and otherwise meets the remaining requirements under § 101(51D)" *In re Wright*, 2020 WL 2193240 (Bankr. D.S.C. April 27, 2020)). Another court later agreed, holding that personal guarantees of a defunct business's debts suffice for an individual to qualify as a debtor "engaged in commercial business" under the small business debtor definition. *In re Blanchard*, 2020 WL 4032411 (Bankr. E.D. La. July 16, 2020); *see also In re Bonert*, 619 B.R. 248, 256 (Bankr. C.D. Cal. 2020)).

33. Movants do not believe that this Court has considered the issue, or at least has not published a decision on it. As such, Movants aver that this Court should follow the majority view, as it is the most textual and logical. While the majority view does have some leniency — *see, e.g.*, *In re Offer Space* 2021 WL 1582625, at *4 (recognizing that that the use of the word "activity" in the Bankruptcy Code can encompass the winding down of a business) — the plain language of the statue necessitates that the debtor have some business operations in the days leading up to the bankruptcy case, whether that is the activity of winding down or actual business operations.

34. The Debtor meets neither of these requirements. In multiple pleadings, the Debtor admits that it is not currently engaged in business and was not engaged in business prior to or on

12

the Petition Date. In the *Declaration of Michael Postal Pursuant to 11 U.S.C. § 1116(1), 1187(a)* [DC Dkt. No. 4] (the "Postal Declaration") the Debtor admits that it does not "maintain a balance sheet … maintain a statement of operations … maintain a cash flow statement" and has never "had occasion to file a federal income tax return." Postal Declaration ¶¶ 3-6. In the *Motion to Forbear from Opening a Debtor-In-Possession Bank Account* [DC Dkt. No. 17] (the "DIP Account Motion") the Debtor indicates that, on the Petition Date, the Debtor "quite literally [] had no assets." DIP Account Motion 1.

35. The Debtor goes on to say that it did not "own real estate on the petition date, did not hold the title to a vehicle, did not lay claim to any personal property and, most pertinently, did not possess any cash or cash equivalents." *Id*. at 1-2. Additionally, the Debtor admits that it "does not currently hold any accounts or notes receivable, does not currently interface with any fee-paying members of the public, and does not have a business plan that is susceptible to the receipt of money at any juncture…" *Id*. at 4. Given these admissions, it is difficult to understand how the Debtor could purport to be engaged in commercial activity.

36. Accordingly, the Debtor does not meet the definition of a "small business debtor" and this Court should dismiss this chapter 11 case.

C. **Dismissal is Warranted Based on Improper Venue and Possibly Bad Faith.**

37. Bankruptcy Courts should dismiss cases where venue is improper. "[A] bankruptcy court faced with an improperly venued action must either dismiss the action or transfer it . . . pursuant to Rule 1014(a)(2) and § 1406(a)." *EDP Med. Comput. Sys. v. United States (In re EDP Med. Comput. Sys.)*, 178 B.R. 57, 63 (M.D. Pa. 1995); *see also Thompson v. Greenwood*, 507 F.3d 416 (6th Cir. 2007) (concluding that "there is no conflict between the rule and any applicable statute on the specific question at issue in this case — whether a bankruptcy court has authority to retain an improperly venued case over the timely objection of any interested party. Both Rule

13

1014(a)(2) and §1406 answer that question in the negative."); *In re Asanda Air II LLC*, 600 B.R. 714, 723 (Bankr. N.D. Ga. 2019) ("[a]s a general matter, a court cannot retain an improperly 'venued' case") (citation omitted); *In re Houghton Mifflin Harcourt Publ'g Co.*, 474 B.R. 122, 134 (Bankr. S.D.N.Y. 2012) (transferring case from an improper venue where "the Court cannot find satisfaction of any of the four bases under § 1408(1)"); *Palmer v. Dau*, No. 6:10cv248, 2010 WL 2740075, at *2 (M.D. Fla. Jul. 12, 2010) (providing that where a case is brought in an improper venue in bad faith, it should be dismissed); *In re Dunmore Homes, Inc.*, 380 B.R. 663, 670 (Bankr. S.D.N.Y. 2008) (section 1408 "is written in the disjunctive making venue proper in any of the listed locations") (citation omitted); *In re Petrie*, 142 B.R. 404 (Bankr. D. Nev. 1992) (holding that Bankruptcy Court may not retain improperly venued case over objection of party in interest but must dismiss or transfer case under 28 U.S.C. § 1406 and Bankruptcy Rule 1014); *ICMR, Inc. v. Tri-City Foods, Inc.*, 100 B.R. 51 (D. Kan. 1989) (finding that where involuntary debtors' principal place of business and principal assets were located in Iowa for greater portion of 180 days preceding bankruptcy, venue did not lie in Kansas under 28 U.S.C. § 1408, and Bankruptcy Court clearly erred when it chose to retain case for convenience of parties, because under Bankruptcy Rule 1014 and 28 U.S.C. § 1406, court could either dismiss or transfer case, but could not retain it); *In re Townsend*, 84 B.R. 764, 767 (Bankr. N.D. Fla 1988) (finding that once a Bankruptcy Court determines that venue is not proper, "it no longer has discretion to retain the case.").

38. Here, the Debtor asserts that it does business in and is a citizen in Washington, D.C. The Debtor provides no evidence in support and evidence shows the opposite. There is no evidence in the DC public records that the Debtor is licensed, incorporated, or doing business in Washington, D.C. In fact, the DC Secretary of State website has no record of the Debtor ever being incorporated

or licensed to do business in Washington, D.C. *See* Ex. C. Rather, evidence shows that it was incorporated in Maryland, until it was delisted. *See* Ex. B. The Debtor's known asset is an asserted interest in real estate that is in Maryland. Schedule A/B Part 9.

39.    In addition to improper venue, Courts may dismiss a bankruptcy case for cause if it was filed in bad faith. 11 U.S.C. § 1112(b) ("… the court may … dismiss a case under this chapter … for cause …"); *See also e.g.*, *In re Blue Chip Capital, DC, LLC*, 600 B.R. 735, 738 (Bankr. D.C. 2019) (dismissing a case found to be filed in bad faith); *Shell Oil Co v. Waldron (In re Waldron)*, 785 F.2d 936, 940 (11th Cir. 1986) (same); *Albany Partners, Ltd. v. Westbrook (In re Albany Partners, Ltd.)*, 749 F.2d 670, 674 (11th Cir. 1984) (dismissal is appropriate when it is evident that the debtor "seeks merely to delay or frustrate the legitimate efforts of [] creditors to enforce their rights.")  Here, the facts support a finding of bad faith.

40.    First, the Debtor has filed for bankruptcy without proper authorization. It never sought or obtained authority to file the bankruptcy case from Ms. Engelhorn, a 50% member of the Debtor. Ex. A ¶¶ 5, 6. It did this knowingly and without advanced warning to her.

41.    Secondly, and based upon the actions taken in the Maryland adversary proceeding, the Washington, DC bankruptcy filing was made to disrupt the entire Civil Court Action. Upon filing this bankruptcy case, the automatic stay halted the Civil Court Action against the Debtor. That is normal. Moreover, most debtors seek to use the bankruptcy claims process to adjudicate liability in pending litigation. In this case, rather than utilize the bankruptcy process to conserve resources and maximize value to creditors and equity, the Debtor has gone on the attack by opening a separate Maryland adversary proceeding aimed at removing the entire Civil Court Action of which the Debtor is only one of many defendants.

42. Such action makes no rationale sense, unless the goal is to frustrate the entire Civil Court Action and advantage one or more codefendants. Movants understand that one of the codefendants, either directly or through an affiliate, is financing this bankruptcy case. *See* Ex. C.

43. If so, dismissal is warranted based on bad faith. *See e.g.*, *In re Franklin Mortg. & Inv. Co., Inc.*, 143 B.R. 295, 298-99 (Bankr. D.C. 1992) (dismissing a bankruptcy case found to be filed in bad faith); *La Trinidad Elderly LP SE v. Loiza Ponce Holdings LLC*, 627 B.R. 779, 799 (1st Cir. B.A.P. 2021) (holding that a filing in bad faith constitutes cause for dismissal and affirming bankruptcy court's dismissal of a case determined to be filed in bad faith); *In re M.A.R. Designs & Construction, Inc.*, 653 B.R. 843, 865 (Bankr. S.D. Tex. 2023) (finding that allegations of fraud against a debtor's president and sole shareholder an indicator of bad faith and, upon considering the totality of the circumstances, finding cause to convert or dismiss the bankruptcy case).

## **RESERVATION OF RIGHTS**

44. The Movants reserve all rights in connection with this Motion to Dismiss, including the right to amend the Motion to Dismiss to include additional reasoning or further allegations, as the case may dictate and as more information becomes available.

## **CONCLUSION**

For the foregoing reasons, the Debtor's chapter 11 case should be dismissed, and the Court should granted all further relief as is just and proper.

Dated: July 10, 2025

                                                 */s/ Sam J. Alberts*
                                                 Sam J. Alberts (DC Bar # 443260)
                                                 David F. Cook (DC Bar #1708239))
                                                 DENTONS US LLP
                                                 1900 K Street, NW
                                                 Washington, DC 20006
                                                 Tel. (202) 496-7500

Email: sam.alberts@dentons.com
Email: david.f.cook@dentons.com

Elysa Chew (*pro hac vice* motion to be filed)
DENTONS US LLP
233 S. Wacker Drive, #5900
Chicago, IL 60606
Tel: (312) 876-8000
elysa.chew@dentons.com

and

Wes P. Henderson, Esq. (DC Bar #502935)
Patrick D. Gardiner, Esq. (DC Bar #1630864)
HENDERSON LAW, LLC
2127 Espey Court, Suite 204
Crofton, Maryland 21114
T: (410) 721-1979
F: (410) 721-2258
wph@hendersonlawllc.com
patrick@hendersonlawllc.com

*Co-Counsel for Claudia Engelhorn,
Individually and on behalf of the Whitewater
Revocable Trust, and White Pearl, LLC*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 10th day of July, 2025, a copy of the foregoing was served electronically upon filing via the ECF system, with copies being sent to all parties receiving electronic notice herein.

*/s/ Sam J. Alberts*
Sam J. Alberts