# **EXHIBIT G**

(Operating Agreement of Swain's Landing LaPlata JC LLC)

THE SHARES HAVE NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED, OR UNDER THE SECURITIES OR "BLUE SKY" LAWS OF MARYLAND OR ANY OTHER STATE. THE TRANSFER OF THE SHARES MAY BE LIMITED BY THE SECURITIES ACT OF 1933, AS AMENDED, OR ANY APPLICABLE STATE SECURITIES ACT OR "BLUE SKY" LAWS.

## OPERATING AGREEMENT OF
## SWAIN'S LANDING LAPLATA JC LLC

This Operating Agreement (this "*Agreement*") is made and entered into as of January 3, 2022, by and among SWAIN'S LANDING LAPLATA JC, LLC (the "*Company*"), a Maryland limited liability company, POJO LAPLATA LLC, a Maryland limited liability company and Whitewater Revocable Trust.

### EXPLANATORY STATEMENT

The parties have agreed to organize and operate a limited liability company in accordance with the terms of, and subject to the conditions set forth in, this Agreement.

NOW, THEREFORE, in consideration of the mutual promises of the parties hereto, each to the others, and of other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto, intending to be legally bound, hereby agree as follows:

### ARTICLE I

### FORMATION OF COMPANY

Section 1.1. Name. The name of the Company shall be "SWAIN'S LANDING LAPLATA JC, LLC."

Section 1.2. Principal Office and Resident Agent of Company. The principal office and place of business of the Company shall be 1800 M Street, Suite #450N, Washington, DC 20036. The Company may have such other or additional offices as the Manager may determine..

Section 1.3. Term. The Company shall commence on the date its Articles of Organization are filed with the Maryland State Department of Assessments and Taxation. Unless sooner terminated pursuant to the further provisions of this Agreement, the Company shall continue in perpetuity.

### ARTICLE II

### DEFINED TERMS

Throughout this Agreement, the word or words listed below within quotation marks shall have the meanings which follow them:

"*Additional Member*" - A Member admitted to the Company other than as an assignee or transferee of all or a portion of a previously admitted Member's Interest in the Company.

"*Affiliate*" - A Person who directly or indirectly through one or more intermediaries' controls or is controlled by or is under common control with a Member. The term "control" as used herein (including the terms "controlling," "controlled by," and "under common control with") means the possession, direct or indirect, of the power to: (i) vote 5% or more of the outstanding voting securities of a corporate Member or such Person; or (ii) otherwise direct the management policies of a Member or such Person by contract or otherwise.

"*Agreement*" - This Operating Agreement, as amended from time to time.

"*Bankruptcy*" - With respect to any Person:

(i) it's filing a petition in bankruptcy or for reorganization or for the adoption of an arrangement under the Bankruptcy Code (as now or in the future amended) or an admission seeking the relief therein provided;

(ii) it's making an assignment for the benefit of creditors;

(iii) it's consenting to the appointment of a receiver for all or a substantial part of its property;

(iv) it's being adjudicated bankrupt or insolvent;

(v) the entry of a court order appointing a receiver or trustee for all or a substantial part of its property without its consent; or

(vi) the assumption of custody or sequestration by a court of competent jurisdiction of all or substantially all of its property.

"*Capital Account*" - With respect to any Member (i) the amount of money contributed by him to the Company, (ii) the fair market value of property contributed by him to the Company (net of liabilities secured by such contributed property that the Company is considered to assume or take subject to under Section 752 of the Code) and (iii) allocations to him of Company income and gain (or items thereof), and decreased by (iv) the amount of money distributed to him by the Company, (v) the fair market value of property distributed to him by the Company (net of liabilities secured by such distributed property that such Member is considered to assume or take subject to under Section 752 of the Code), (vi) all allocations to him of expenditures of the Company described in Section 705(a)(2)(B) of the Code, and (vii) allocations of Company loss and deduction (or items thereof); subject to such other adjustments required by Treas. Reg. 1.704-1(b)(4) (or any corresponding successor provisions). In all events, such Capital Account shall be maintained in accordance with the Treasury Regulations promulgated under Section 704(b) of the Code.

"*Capital Contribution*" - The amount of cash and the fair market value of assets (as of the date of contribution), net of any liabilities, contributed to the Company by each Member. Any reference in this Agreement to the Capital Contributions of a then Member shall include a Capital Contribution previously made by any prior Member with respect to the Interest of such then Member.

"*Capital Transaction*" - A financing, refinancing, sale, exchange or other disposition of all or substantially all of the assets of the Company.

"*Capital Transaction Proceeds*" - All cash receipts from a Capital Transaction less (i) all cash expenditures associated with a Capital Transaction and (ii) such amounts reserved for future expenditures as the Required Majority of Members determine in their sole discretion.

"*Cash Flow*" - For any fiscal year, all cash receipts of the Company (other than Capital Contributions and Capital Transaction Proceeds) plus amounts released from reserves, less the sum of (i) all cash expenditures (excluding expenditures in connection with a Capital Transaction) and (ii) such reserves for contingent or anticipated liabilities and working capital as shall be determined by the Manager in his sole discretion.

"*Code*" - The Internal Revenue Code of 1986, as amended, and any successor statute thereto.

"*Company*" - This Limited Liability Company.

"*Interest*" - The total of all ownership rights of a Member in the Company.

2

"*Manager*" – Charles S. Foster, or his successors appointed as provided in Section 6.5. Such term shall include and refer to two or more Managers if more than one Manager shall at any time exist hereunder.

"*Members*" - Each Person signing this Agreement and any Person who subsequently is admitted as a member of the Company. Exhibit A shall be amended to reflect the admission of any Additional Members or Substitute Members to the Company.

"*Percentage Interest*" - A particular Member's percentage interest as set forth on **Exhibit A**.

"*Persons*" - Individuals, partnerships, corporations, unincorporated associations, limited liability companies and trusts and estates.

"*Profit*" and "*Loss*" - The taxable income and taxable loss of the Company for federal income tax purposes, determined as of the close of the period in question, including, where the context requires, related federal income tax items such as capital gain and loss, tax preferences, investment interest, investment tax credits, and depreciation.

"*Required Majority*" - Those Members owning more than 50% of the Percentage Interests and entitled to vote pursuant to this Agreement.

"*State*" - The State of Maryland.

"*Substitute Member*" - A Member admitted to the Company who receives its Interest in the Company as an assignee or transferee of an existing Member.

"*Transfer*" - A sale, transfer, donation, assignment, alienation, encumbrance, or other disposition.

## ARTICLE III

## BUSINESS AND PURPOSE OF THE COMPANY

The purposes of the Company shall be to engage in and carry on the development of a certain real estate project located in LaPlata, Maryland, and to hold, sell, dispose of and otherwise deal with the Company's assets and to do all things necessary, convenient or incidental to the achievement of the foregoing; to carry on such business in the State of Maryland, in any state, territory, district, or dependency of the United States, or in any foreign country; and to perform any and all activities necessary and proper in connection therewith and convenient or incidental thereto. The Company may enter into such contracts, agreements, ventures or arrangements with such other Persons as may be deemed necessary by the Manager to accomplish any of its purposes. The Company shall have the power to do all things which the Manager shall believe to be necessary and appropriate in furtherance of the Company's purposes.

## ARTICLE IV

## CAPITAL CONTRIBUTIONS; CAPITAL ACCOUNTS

Section 4.1. Initial Capital Contributions.

4.1.1. The Members have contributed cash as their initial Capital Contributions to the Company in the amounts set forth on **Exhibit A**.

4.1.2. A Member may make additional Capital Contributions upon request of the Manager and the Percentage Interests of the Members shall be adjusted accordingly. The Member anticipate an additional Capital Contribution in the amount of $2,000,000 in proportion to the initial Capital Contributions.

3

Section 4.2. Capital Accounts.

4.2.1. An individual Capital Account shall be maintained for each Member.

4.2.2. No interest shall be paid on any present or future Capital Account.

4.2.3. Each Member's Capital Account shall be increased by the amount of:

(i) such Member's Capital Contributions, including such Member's initial Capital Contribution;

(ii) any item of income or gain allocated to such Member; and

(iii) any liabilities of the Company that are assumed by such Member or secured by any property distributed to such Member.

4.2.4. Each Member's Capital Account shall be decreased by:

(i) the cash amount or book value of any property distributed to such Member;

(ii) the amount of any item of loss or deduction allocated to such Member; and

(iii) the amount of any liabilities of such Member assumed by the Company or which are secured by any property contributed by such Member to the Company.

## ARTICLE V

## ALLOCATION OF PROFITS AND LOSSES; CERTAIN TAX MATTERS; DISTRIBUTIONS

Section 5.1. Cash Flow. Any Cash Flow which is to be distributed, in the sole discretion of the Manager, among the Members with respect to any fiscal year of the Company shall be distributed as soon as practicable after the end of the fiscal year in proportion to their Percentage Interests.

Section 5.2. Capital Transaction Proceeds. Any Capital Transaction Proceeds that are to be distributed, in the sole discretion of the Manager, among the Members shall be distributed as soon as practicable after receipt thereof in proportion to their Percentage Interests.

Section 5.3. Allocation of Profits and Losses.

5.3.1. Except as provided in Section 5.6, the Profits of the Company for each fiscal year of the Company shall be allocated among the Members as follows:

(i) first, to the extent of and in proportion to any losses allocated to the Members, less any prior allocations under this Section 5.3.1(i);

(ii) second, to the payment of eight percent (8%) per annum return on all cash CapitalContributions amounts to the Members in proportion to their Capital Contributions.

(iii) third, a two percent (2%) per annum management fee on the daily outstanding cash Capital Contribution amounts, accrued quarterly to the Members in proportion to their Percentage Interests; and

(iv) fourth, to the Members in proportion to their Percentage Interests.

4

5.3.2. Except as provided in Section 5.6, the Losses of the Company for each fiscal year from operations shall be allocated among the Members in proportion to their respective Percentage Interests.

5.3.3. Except as provided in Section 5.6, all Losses arising from a Capital Transaction shall be allocated in the following order of priority:

(i) first, if one or more Members has a positive balance in its Capital Account, to such Members in proportion to their respective positive Capital Account balances until such Members' positive Capital Accounts have zero balances; and

(ii) second, any remaining loss shall be allocated among the Members in proportion to their respective Percentage Interests.

Section 5.4. <u>Determination of Profits and Losses</u>. The Profits or Losses of the Company shall be determined in accordance with the accounting methods followed for federal income tax purposes and otherwise in accordance with sound accounting principles and procedures applied in a consistent manner. An accounting shall be made for each fiscal year by the accountants employed by the Company as soon as possible after the close of each such fiscal year, to determine the Members' respective shares of Profits or Losses of the Company, which shall be credited or debited, as the case may be, to the Members' respective Capital Accounts. For tax purposes, all items of income, gain, loss, deduction or credit shall be allocated to and among the Members in the same proportion in which they share Profits and Losses.

Section 5.5. <u>Right to Distributions</u>. No Member shall have the right to receive distributions of property from the Company.

Section 5.6. <u>Minimum Gain and Qualified Income Offset</u>. Notwithstanding anything to the contrary contained in this Article V, the allocations of income or gain described in Treas. Reg. Sections 1.704-1(b)(2)(ii)(d) (last paragraph) and 1.704-2(f) shall be made in the circumstances described in such sections of such Treasury Regulations or any successor provisions thereto. This Section 5.6 is intended to constitute a qualified income offset provision and minimum gain chargeback provision under such sections of such Treasury Regulations and shall be so interpreted for all purposes.

<u>ARTICLE VI</u>

<u>MANAGEMENT: RIGHTS, POWERS AND DUTIES</u>

Section 6.1. <u>Powers of the Manager</u>. In addition to the powers now or hereafter granted an authorized person of a limited liability company under the Act or which are granted the Manager under any provisions of this Agreement, the Manager shall have full, exclusive and complete discretion, power and authority, subject in all cases to the provisions of this Agreement (including Section 6.2 with respect to decisions of the Manager) and the requirements of applicable law, to manage, control, administer and operate the business and affairs of the Company for the purposes herein stated, to make all decisions affecting such business and affairs, to adopt such accounting rules and procedures as he shall deem appropriate in the conduct of the business and affairs of the Company and to do all things which he shall deem necessary or desirable in the conduct of the business and affairs of the Company, including without limitation, for Company purposes, the power:

6.1.1. to acquire by purchase, lease or otherwise, any real or personal property, tangible or intangible, and to construct, operate, maintain, finance, improve, develop, and own, sell, convey, assign, mortgage or lease any real estate and any personal property, necessary to the accomplishment of the purposes of the Company;

6.1.2. to employ such Affiliates and personnel as it shall deem desirable or advisable for the conduct of Company activities, including permanent, temporary or part-time employees and outside contractors or consultants, and to determine their compensation and other terms of employment;

6.1.3. to borrow money in the ordinary course of business for Company purposes on any terms he shall see fit and, in connection therewith, to issue evidences of indebtedness, to refinance existing indebtedness, and to

5

pledge or hypothecate or otherwise encumber any of the assets and revenues of the Company. No creditor who makes a nonrecourse loan to the Company may have or acquire at any time any direct or indirect interest in the profits, capital or property of the Company, other than as a secured creditor;

    6.1.4. to execute leases or modify leases with respect to any part or all of the assets of the Company and to take such action and execute and deliver such documents as may be required in connection with any note, lease, bond, indemnity, security agreement, escrow, bank letter of credit or otherwise in connection with the financing or refinancing of the Company's business;

    6.1.5. to enter into, perform and carry out contracts of any kind, including contracts with Affiliates, necessary to, in connection with or incidental to the accomplishment of the purpose of the Company;

    6.1.6. to purchase, at the expense of the Company, liability and other insurance to protect Company assets, as the Manager in his best judgment shall deem prudent;

    6.1.7. to do any and all other things affecting the rights and obligations of the Company, including, without limiting the generality of the foregoing, the employing of attorneys and the incurring of other legal expenses and the conduct or settlement of claims and litigation;

    6.1.8. to establish reserve funds to provide for future expenses of the Company and other future capital requirements;

    6.1.9. to appoint a tax matters Member for all purposes under the Code and all regulations promulgated thereunder;

    6.1.10. to confess a judgment against the Company;

    6.1.11. to submit a Company, claim or liability to arbitration;

    6.1.12. to enter into Capital Transactions;

    6.1.13. to merge or otherwise combine the Company with one or more other entities; and

    6.1.14. to establish and maintain escrow, depository, checking and other necessary accounts with such banks, trust companies or other depositories as the Manager shall deem advisable and in connection therewith the Manager may deliver all appropriate, necessary or advisable certificates, resolutions or other documentation.

Section 6.2. <u>Decisions of Managers</u>. All operations of the Company shall be conducted by the Manager.

Section 6.3. <u>Admission of Additional Members</u>. The Manager may admit Additional Members to the Company. Substitute Members may be admitted to the Company pursuant to Section 8.1 hereof.

Section 6.4. <u>Withdrawal and Transfer</u>. A Manager may withdraw as a Manager from the Company upon notice to all Members. Such withdrawal does not affect any Manager's Interest in his capacity as a Member.

Section 6.5. <u>Election of New Manager</u>. The election of a new Manager in the event of the death, legal incompetency, Bankruptcy, dissolution, liquidation or voluntary withdrawal of a Manager (the "*withdrawing Manager*"), shall be effective only if each of the following conditions shall have been satisfied:

    6.5.1. the new Manager shall have agreed to accept the responsibilities of the withdrawing Manager;

    6.5.2. this Agreement shall have been amended to name the new Manager, and all necessary or appropriate filings with the State or other authorities have been made;

6

6.5.3. the Company shall have received an opinion of its counsel to the effect that the substitution of such new Manager will not result in the Company being classified for federal income tax purposes as an association taxable as a corporation and not as a partnership; and

6.5.4. the new Manager shall have been elected by unanimous approval of the other Managers and the unanimous approval of the Members, or by the unanimous approval of the Members if no Manager is remaining as provided in Sections 7.2 and 10.2.

Section 6.6. Members as Agents. No Member (other than the Manager, and in the case of the Manager only as provided in this Agreement) has the authority to act as an agent of the Company.

## ARTICLE VII

## THE MEMBERS; RIGHTS AND OBLIGATIONS

Section 7.1. Certain Rights. No salary shall be paid to any Member nor shall any Member have a drawing account. No Member shall perform any act detrimental to the best interests of the Company or which would make it impossible to carry on the ordinary business of the Company.

Section 7.2. Approval Rights of the Members. Notwithstanding anything in Article VI, the consent of the Required Majority of Members shall be required for the election to continue the Company as provided in Section 10.2.

## ARTICLE VIII

## TRANSFER OF INTERESTS

Section 8.1. Transfer of Interests.

8.1.1. No Member may transfer, directly or indirectly, all or any portion of its Interest other than with the prior written consent of the Manager, which consent may be withheld in the Manager's discretion.

8.1.2. No Transfer of any part of an Interest in the Company (whether voluntary, involuntary or by operation of law) may be made unless all of the following conditions have been satisfied:

(i) no such Transfer shall be made which, in the opinion of counsel to the Company, may result in the termination of the Company for the purposes of Section 708 of the Code;

(ii) no such Transfer shall be made to a minor, incompetent or Bankrupt;

(iii) no such Transfer shall be made if, in the opinion of counsel to the Company, such assignment may not be affected without registration under the Securities Act of 1933, as amended, or would result in the violation of any applicable state securities laws;

(iv) the transferee, if requested by the Manager, presents an opinion of counsel, acceptable to counsel to the Company, that such assignment will not adversely affect the status of the Company as a partnership for federal income tax purposes;

(v) the transferee executes and delivers such documents as the Manager shall deem reasonably necessary or advisable to cause him to become a Substitute Member; and

(vi) the transferee agrees to be bound by the terms and provisions of this Agreement.

7

8.1.3. Any Transfer in contravention of any of the provisions of this Section 8.1 shall be void and ineffectual, and shall not bind or be recognized by the Company.

Section 8.2. Payment of Costs and Expenses. All costs and expenses incurred by the Company in connection with the Transfer of an Interest, and/or the substitution of a transferee as a Substitute Member, including any filing fees and publishing costs and the fees and disbursements of counsel, shall be pre-paid by the transferring Member, or if not paid by him, then by the transferee.

## ARTICLE IX

## COMPENSATION, REIMBURSEMENTS AND FEES

Section 9.1. Reimbursements.

9.1.1. The Company will reimburse the Members for all loans made to or on behalf of the Company, in connection with the purposes of the Company.

9.1.2. The Members shall be entitled to reimbursement for reasonable ordinary and necessary expenses incurred on behalf of the Company.

Section 9.2. Expenses. All expenses in connection with the Company's business activities shall be considered Company expenses. Each Member shall pay its own legal and accounting fees in connection with protecting or enforcing its particular Interest in the Company.

Any of the Members and Affiliates of Members may provide other services to the Company (such as management services).

## ARTICLE X

## DISSOLUTION OF THE COMPANY

Section 10.1. Events of Dissolution. The death, legal incompetency, liquidation, dissolution, Bankruptcy or withdrawal of any Member shall not dissolve the Company. In addition, such event shall not entitle such Member or its successor in interest to have its Interest purchased by the Company or the other Members as provided in Section 4A-905(l)(ii) of the Act. The Company shall be dissolved upon the expiration of the term of the Company as provided in Section 1.3 or upon the happening of any of the following:

10.1.1. the sale or disposition of all or substantially all of the Company's assets, and the distribution of the proceeds thereof to the Members;

10.1.2. the consent of the Manager;

10.1.3. upon an event which makes it unlawful for the Company's business to be continued;

10.1.4. the entry of a decree of judicial dissolution; or

10.1.5. the death, legal incompetency, resignation, withdrawal, liquidation, dissolution, or Bankruptcy of a Member, unless the Company is continued in accordance with Section 10.2.

Section 10.2. Election to Continue. Upon the occurrence of any event provided in Section 10.1.5 of this Agreement (a "*Governing Occurrence*"), the Company shall be dissolved unless the Manager and the Required Majority of Remaining Members within 90 days of the Governing Occurrence, elect to continue the business of the Company in accordance with the terms of this Agreement. In the event of a Manager's death, legal incompetency, resignation, withdrawal, liquidation, dissolution, or Bankruptcy and the Company is continued pursuant to this Section 10.2, such Manager's Interest shall continue to be a Member Interest and all decisions on behalf of the Company shall

8

be made by a substitute Manager appointed by unanimous consent of the Members. Such conversion shall not affect the former Manager's rights to Profit, Loss, Cash Flow and Capital Transaction Proceeds from the Company.

Section 10.3. Winding Up. Upon dissolution under Section 10.1, no further business shall be conducted by the Company except for the taking of such action as shall be necessary for the winding up of the affairs of the Company and the distribution of its assets to the Members pursuant to the provisions hereof, and thereupon such Person or Persons as the Manager shall designate (the "*Liquidator*") shall act as liquidating trustee and immediately proceed to wind up and terminate the business and affairs of the Company. If no Manager is then serving, the Liquidator shall be as designated by the Required Majority of Members.

Section 10.4. Sale of Company Assets. Upon dissolution, the Liquidator shall sell such of the Company assets as it deems necessary or appropriate. In lieu of the sale of any or all of the Company property, the Liquidator may convey and assign all or any part of the Company property to the Members in undivided interests as tenants in common or such other form of similar ownership as shall be applicable to the jurisdiction where the property is located. A full accounting shall be made of the accounts of the Company and each Member thereof and of the Company's assets, liabilities and income, from the date of the last accounting to the date of such dissolution. The Profits and Losses of the Company shall be determined to the date of dissolution and transferred, as provided in Article V, to the respective Capital Accounts of the Members. In accounting for distributions of Company property, such property shall be valued at the fair market value at the date of dissolution as determined by the Liquidator, except that no value shall be placed upon the firm name or goodwill of the Company. Any difference between the valuation of the Company property and its book value shall be considered as though it represented profit or loss, and shall be allocated to the Capital Accounts of the Members as provided in Section 4.2. Any gain or loss on disposition of Company property shall be credited or charged to the Capital Accounts of the Members in the same manner as the difference between the valuation of Company property and its book value.

Section 10.5. Distribution of Assets. The Liquidator shall apply the remaining Company assets in the following order of priority:

10.5.1. First, to the payment and discharge of, or reservation for, all of the Company's debts and liabilities and the expenses of dissolution and winding up, in the order or priority as provided by law.

10.5.2. Second to the payment to a reserve fund for contingent liabilities to the extent deemed reasonable by the Liquidator.

10.5.3. Third, the balance to the Members to the extent of and in proportion to their respective Capital Accounts after taking into account the allocations of Profit or Loss pursuant to Section 5.3 and prior distributions of cash or property pursuant to Sections 5.1 or 5.2.

Section 10.6. Return of Capital Contributions. The Members shall look solely to the assets of the Company for the return of their Capital Contributions, and if the Company property remaining after the payment or discharge of the debts, obligations and liabilities of the Company is insufficient to return the Capital Contributions, they shall have no recourse therefor against the Manager or the Liquidator.

## ARTICLE XI

## ACCOUNTING PROVISIONS

Section 11.1. Fiscal Year. The fiscal year of the Company shall be the calendar year.

9

Section 11.2. <u>Partnership Representative</u>. (a) Charles S. Foster is hereby designated, and will be specifically authorized to act as, the "*Partnership Representative*" in accordance with Section 6223 of Subchapter C of the Code (the "*Partnership Audit Rules*").

(b)  The Partnership Representative will apply the provisions of the Partnership Audit Rules, with respect to any audit, imputed underpayment, other adjustment, or any such decision or action by the Internal Revenue Service with respect to the Company or the Members for such taxable years, in the manner determined by the Partnership Representative. The Partnership Representative shall have all of the powers and authority of a partnership representative under the Partnership Audit Rules and shall represent the Company at the Company's expense and may expend Company funds for professional services and costs associated therewith.

(c)  The Partnership Representative shall duly and timely elect under Section 6226 of the Code to require each Person who holds an Interest during the taxable year of the Company that was audited to personally bear any tax, interest and penalty resulting from adjustments based on such audit and shall notify each such Person (and the Service) of its share of such audit adjustments.

(d)  Each Member does hereby agree to indemnify and hold harmless the Company from and against any liability with respect to its share of any tax deficiency (including interest and penalties) paid or payable by the Company that is allocable to the Member (as reasonably determined by the Members) with respect to an audited or reviewed taxable year for which such Member was a Member in the Company (including any applicable interest and penalties).

(e)  The Members acknowledge and agree that the provisions of this <u>Section 11.2</u> shall continue to apply to a Person even after that Person ceases to hold an Interest for any reason.

Section 11.3. <u>Tax Elections</u>. The Manager shall have the authority to make all Company elections permitted under the Code, including without limitation elections under Code Section 754.

## ARTICLE XII

## REPORTS

Section 12.1. <u>Reports</u>. As soon as practicable after the end of each fiscal year, the Manager shall cause to be delivered to each Member all information relating to the Company necessary for the preparation by each Member of its federal income tax return.

Section 12.2. <u>Company List</u>. The Manager shall maintain a list of the names and addresses of all Members at the principal office of the Company. Such list shall be made available for the review of any Member or its representative at reasonable times, and upon request, either in person or by mail, the Manager shall furnish a copy of such list to any Member or its representative for the cost of reproduction and mailing.

Section 12.3. <u>Access</u>. The Members and/or their authorized representatives shall be permitted access to all records of the Company after adequate notice, at any reasonable time.

## ARTICLE XIII

## INDEPENDENT ACTIVITIES; TRANSACTIONS WITH AFFILIATES

Each of the parties hereto may engage in whatever other activities it chooses. The Members shall not be obligated to contribute their full time and efforts to the Company; however, the Manager shall diligently and faithfully devote such of its time to the business of the Company as may be necessary to properly conduct the affairs of the Company. The Members may in the future engage in the acquisition and development of other businesses, both for their own account and for others, and nothing contained herein shall be deemed to prevent such parties from engaging in and continuing such activities, or initiating further such other limited liability companies, corporations, partnerships, joint ventures or other entities in which they are or may become a party, nor as requiring them to permit the Company or any of the Members to participate in any such operations in which they may be interested including activities which compete with the Company. The fact that a Member, a member of his or her family (if the Member be a natural person) or an Affiliate is directly or indirectly interested in or connected with any Person employed by the Company or from whom the Company may buy merchandise, materials, services or other property shall not prohibit the Company from employing, or from dealing with, such Person.

## ARTICLE XIV

## INDEMNIFICATION OF THE MANAGER

Section 14.1. Liability of Members. The Manager shall not be liable to the Company or to the other Members for any act or omission, done in good faith, and within what was believed to be the scope of Company business, unless such Manager shall have been culpable of willful or wanton misconduct, recklessness, or in breach of its fiduciary obligations (if any) in connection therewith.

Section 14.2. Indemnification. The Company shall indemnify and hold harmless the Manager against any and all claims, actions, demands, costs, expenses (including attorneys' fees), damages and losses as a result of any allegation, claim or legal proceeding relating to any act or omission concerning the activities of the Company, unless the person or party against whom any such allegation or claim is made or legal proceeding is directed was culpable of willful or wanton misconduct, recklessness, or in breach of its fiduciary obligations (if any) in connection therewith. The indemnification of the Manager shall be limited to and recoverable only out of the assets of the Company.

## ARTICLE XV

## ASSURANCES

Section 15.1. Execution of Documents by Members. Each Member hereby agrees to execute all such certificates and other documents conforming hereto and to do all such filing, recording, publishing and other acts as may be deemed by the Manager appropriate to comply with the requirements of law for the formation and operation of a limited liability company.

Section 15.2. Filing of Documents by Manager. The Manager shall promptly execute, acknowledge, file with the proper offices and publish in each jurisdiction in which the Company conducts business such notices, certificates, statements or other instruments as may be necessary or appropriate to comply with the requirements for the formation and operation of a limited liability company under the laws of the State.

## ARTICLE XVI

## AMENDMENTS

This Agreement shall not be amended except by the Manager or, if there is no Manager, by the affirmative vote of the Required Majority of Members. In the event this Agreement is amended as hereinbefore provided, each Member agrees promptly to execute or cause to be executed one or more amendments to this Agreement.

## ARTICLE XVII

## MISCELLANEOUS

Section 17.1. Notices. All notices or other communications required or permitted to be given pursuant to this Agreement shall be in writing and shall be considered as properly given or made if hand delivered or mailed from within the United States by first class mail, postage prepaid, and addressed to a Member at its address set forth on **Exhibit A**. Notices to the Company shall be addressed to the Manager at the following address:

SWAIN'S LANDING LAPLATA JC LLC
c/o Michael Postal
1801 16th Street, NW, #606
Washington, DC 20009

Time periods shall commence on the date of hand delivery or mailing of a notice or any other communication. Any notice which is required to be given within a stated period of time shall be considered timely if postmarked before midnight of the last day of such period. Any Member may change its address by giving notice in writing stating its new address to the Manager. Commencing on the tenth day after the giving of such notice, such newly designated address shall be such Member's address for the purposes of all notices or other communications required or permitted to be given pursuant to this Agreement. Notices to the Company shall be deemed made if given to the Manager.

Section 17.2. Applicable Law. This Agreement shall be governed by and construed in accordance with the laws of the State. Any action against the Company or the Manager brought by any Member with regard to this Agreement or the rights and obligations of the Manager, the Members or the Company under this Agreement shall be brought in the United States District Court for the District of Maryland located in Baltimore City or the appropriate court of the State located in the jurisdiction where the Company then has its principal office. The parties hereby irrevocably consent to the jurisdiction of the aforementioned courts and agree that service of process of the aforementioned courts may be served upon any of them outside of Maryland in the same manner as process may be served upon them within Maryland.

Section 17.3. Genders. The use of any gender herein shall be deemed to be or include the other genders and the use of the singular herein shall be deemed to be or include the plural (and vice-versa), wherever appropriate. The headings herein are inserted only as matter of convenience and reference and in no way define, limit or describe the scope of this Agreement, or the intent of the provisions thereof.

Section 17.4. Binding Effect. This Agreement shall be binding upon, and inure to the benefit of, the parties hereto and their respective heirs, executors, administrators, personal and legal representatives, successors and permitted assigns, except as otherwise expressly provided herein.

Section 17.5. Counterparts. This Agreement may be executed in any number of counterparts, each of which shall be considered an original and all of which taken together shall constitute one and the same instrument.

Section 17.6. Interest Held for Investment. Each Member does hereby represent and warrant by the execution of this Agreement that (A) its Interest was obtained for investment purposes only and not for resale or distribution, (B) it is qualified by the experience of its members and managers to analyze the merits and risks of a contribution to the Company, and (C) it has not relied on the advice of any of the other Members or their counsel in making its decision to contribute to the Company and become a Member herein.

12

Section 17.7. Securities Laws Restrictions. The Interests described in this Agreement have not been registered under the Securities Act of 1933, as amended (the "Act") or under the securities laws of the State or any other jurisdiction (the "State Acts"). Consequently, these Interests may not be sold, transferred, assigned, pledged, hypothecated or otherwise disposed of, except in accordance with the provisions of the Act, the State Acts and this Agreement.

Section 17.8. Application of Subchapter K. No election shall be made by the Company or any Member for the Company to be excluded from the application of the provisions of Subchapter K of the Code, or from any similar provisions of State and foreign tax laws which relate to the taxation of partnerships.

Section 17.9. Waiver of Partition. Each Member (and its representatives, successors and assigns) hereby irrevocably waives any and all right to maintain any actions for partition, to compel any sale with respect to any assets or properties of the Company or to cause a judicial dissolution of the Company.

Section 17.10. Arbitration of Deadlock. If any vote is required on any matter under this Agreement, and there are neither sufficient votes to approve nor disapprove of the matter, then either party may require that the matter be submitted to arbitration in accordance with the rules of the American Arbitration Association.

Section 17.11. Entire Agreement. This Agreement contains a complete statement of all arrangements among the parties with respect to the Company and cannot be changed or terminated orally or in any manner other than as provided in Article XVI. There are no representations, agreements, arrangements or understandings (including but not limited to any payments to any party hereto) oral or written, between or among the parties relating to the subject matter of this Agreement which are not fully expressed in this Agreement.

[BALANCE OF PAGE INTENTIONALLY LEFT BLANK]

IN WITNESS WHEREOF, the Members have executed this Agreement as of the day and year first above written.

COMPANY:

SWAIN'S LANDING LAPLATA JC, LLC

By: _____
Name: Michael Postal
Title: Manager

MEMBERS:

POJO LAPLATA LLC

By: _____
Name: Michael Postal
Title: Manager

WHITEWATER REVOCABLE TRUST

By:_____

14



## EXHIBIT A

### Capital Contribution and Percentage Interest of Members

| Members | Capital Contribution | Percentage Interest |
|---|---|---|
| Michael Postal | $65,000.00 | 20% |
| POJO LaPlata LLC | $0.00 | 30% |
| Whitewater Revocable Trust | $585,000.00 | 50% |
| Total | $650,000.00 | 100% |