# **EXHIBIT A**

# OPERATING AGREEMENT

## of

## Swain Landing LaPlata JC LLC

**This Operating Agreement** (the "Agreement") made and entered into this 4th day of Janaury, 2022.

**BY:**

Michael Postal whose mailing address is 1801 16th Street NW, #606, Washington, DC 20009, and Anjon Jones whose mailing address is 4302 Broken Arrow Court, Clinton, MD 20735 (the "Members").

**IN CONSIDERATION OF** and as a condition of the Members entering into this Agreement and other valuable consideration, the receipt and sufficiency of which is acknowledged, the Member agrees as follows:

### Formation

1. By this Agreement, the Members form a Limited Liability Company (the "Company") in accordance with the laws of the State of Maryland.

### Name

2. The name of the Company will be Swain Landing LaPlata JC LLC.

### Members

3. Any reference in this Agreement to two or more Members, and/or that requires the majority consent or unanimous consent of Members, or that requires a certain percentage vote of Members, should be interpreted as only requiring the consent or vote of the Members.

### Purpose

4. The purpose of this company is to conduct all lawful business.

### Term

5. The Company will continue until terminated as provided in this Agreement.

### Place of Business

6. The Principal Office of the Company will be located at 1801 16th Street, NW, #606, Washington, DC 20009, USA or such other place as the Member may from time to time designate.

## Capital Contributions

7.  The following table shows the Initial Contributions of the initial Members. The Members agrees to make the Initial Contributions to the Company in full, according to the following terms:

| MEMBER | CONTRIBUTION | MEMBERSHIP PERCENTAGE |
|---|---|---|
| MICHAEL POSTAL | $185,000 | 50% |
| ANJON JONES | $0 | 50% |

## Allocation of Profits/Losses

8.  Subject to the other provisions of this Agreement, the Net Profits or Losses, for accounting purposes, will accrue to and be borne by the Members:

9.  No Member will have priority over any other Member for the distribution of Net Profits or Losses.

## Nature of Interest

10.  The Member's Interests in the Company will be considered personal property.

## Liability for Contribution

11.  The Member's obligation to make its required Capital Contributions can only be compromised or released with the consent of the Member or as otherwise provided in this Agreement.

## Additional Contributions

12.  Capital Contributions may be amended from time to time, according to the business needs of the Company.

13.  Any advance of money to the Company by any Member in excess of the amounts provided for in this Agreement or subsequently agreed to, will be deemed a debt due from the Company rather than an increase in the Capital Contributions of the Member. This liability will be repaid with interest at the rate of 15 percent, compounding annually. This liability will not entitle the lending Member to any increased share of the Company's profits, nor to a greater voting power. Repayment of such debts will have priority over any other payments to Member.

## Capital Accounts

14.  An individual capital account (the "Capital Account") will be maintained for each Member and their Initial Contributions will be credited to this account. Any Additional Contributions made by any Member will be credited to that Member's individual Capital Account.

## Interest on Capital

15.  The Member will be entitled to interest on its Capital Contributions at a rate of 15 percent,

compounding annually.

## Management

16. Management of the Company is vested in the following Manager (individually the "Manager") until such time as they are removed by the Member or withdraw from the position: Michael Postal

17. The duties, responsibilities, and authorities of the Manager will include the following:

    Supervise and control all the business and affairs of the Company. The Manager shall preside at all meetings of the Members. The Manager has the full, complete and exclusive power, authority, and sole discretions to take, without the consent of the Members, any and all action on behalf of the Company of whatsoever type and to make all decisions with respect thereto. The Manager may sign, with the Officer or Secretary, or any other proper officer of the Company duly authorized by the Members, certificates for membership of the Company, any deeds, mortgages, notes, bonds, contracts or other instruments and, in general, shall perform all duties as may be prescribed from time to time by the Members.

18. A new Manager may be added to the Company with the written consent of the Members.

19. The Manager will be reimbursed for expenses directly related to the operation of the Company.

20. The Members will be consulted and the advice and opinions of the Members will be obtained as much as is practicable. However, the Manager will have management and control of the day-to-day business of the Company for the purposes stated in this Agreement. All matters outside the day-to-day business of the Company will be decided by the Members as outlined elsewhere in this Agreement.

21. In addition to day-to-day management tasks and any other duties and responsibilities already identified in this Agreement, the Manager's duties will include keeping, or causing to be kept, full and accurate business records for the Company according to generally accepted accounting principles (GAAP), and overseeing the preparation of any reports considered reasonably necessary to keep the Members informed of the business performance of the Company.

22. A Manager will not be liable to the Members for any action or failure to act resulting in loss or harm to the Company except in the case of gross negligence or willful misconduct.

23. Each Manager will devote such time and attention to the business of the Company as required to carry out their duties and responsibilities for the conduct of the Company's business.

### Authority to Bind Company

24.   The Manager has the authority to bind the Company in contract.

### Duty of Loyalty

25.   The Members or Manager may invest in or engage in any business of any type, including without limitation, a business that is similar to the business of the Company whether or not in direct competition with the Company and whether or not within the established or contemplated market regions of the Company. Neither the Company nor any Members will have any right to that opportunity or any income derived from that opportunity.

### Duty to Devote Time

26.   The Members will devote such time and attention to the business of the Company to conduct of the Company's business.

### Member Meetings

27.   A meeting may be called by the Members providing that reasonable notice has been given to the Manager.

28.   Regular meetings of the Members and the Manager will be held only as required.

### Voting

29.   The Members will be entitled to cast its vote on any matter based upon the proportion of that Member's Capital Contributions in the Company.

### Admission of New Members

30.   A new Member may only be admitted to the Company with the consent of the existing Members.

31.   The new Member agrees to be bound by all the covenants, terms, and conditions of this Agreement, inclusive of all current and future amendments. Further, a new Member will execute such documents as are needed to affect the admission of the new Member. Any new Member will receive such business interest in the Company as determined by a unanimous decision of the other Members.

### Voluntary Withdrawal of a Member

32.  The Member will have the right to voluntarily withdraw from the Company. Written notice of intention to withdraw must be served upon the remaining Members and Manager at least three months prior to withdrawal.

33.  The voluntary withdrawal of a Member will have no effect upon the continuance of the Company.

34.  It remains incumbent on the withdrawing Member to exercise this dissociation in good faith and to minimize any present or future harm done to the remaining Members as a result of the withdrawal.

### Involuntary Withdrawal of a Member

35.  Events leading to the involuntary withdrawal of a Member from the Company will include but not be limited to: death of a Member; Member mental incapacity; Member disability preventing reasonable participation in the Company; Member incompetence; breach of fiduciary duties by a Member; criminal conviction of a Member; Operation of Law against a Member; or a legal judgment against a Member that can reasonably be expected to bring the business or societal reputation of the Company into disrepute. Expulsion of a Member can also occur on application of another Member, where it has been judicially determined that the Member: has engaged in wrongful conduct that adversely and materially affected the Company's business; has willfully or persistently committed a material breach of this Agreement or of a duty owed to the Company or to the other Members (if any); or has engaged in conduct relating to the Company's business that makes it not reasonably practicable to carry on the business with the Member.

### Right of First Purchase

36.  Where the Company consists of two or more Members, in the event that a Member's Interests in the Company is or will be sold, due to any reason, the remaining Members will have a right of first purchase of that Member's Interests. The value of that interest in the Company will be the lower of the value set out in the Valuation of Interest section of this Agreement and any third party offer that the Member wishes to accept.

### Assignment of Interest

37.  Where a Member's financial interest in the Company is assigned to another party who is not an existing Member, that party will be treated as a new Member. An assignment of full membership status inclusive of all duties, obligations, and rights held by the previous Member will be governed by the conditions described under the Admission of New Members section of this Agreement.

38.  In the event that a Member's Interests in the company is transferred or assigned as the result of a

court order or Operation of Law, the trustee in bankruptcy or other person acquiring that Member's Interests in the Company will only acquire that Member's economic rights and interests and will not acquire any other rights of that Member or be admitted as a Member of the Company or have the right to exercise any management or voting interests.

## Valuation of Interest

39. A Member's financial interest in the Company will be in proportion to their Capital Contributions, inclusive of any Additional Capital Contributions.

40. In the absence of a written agreement setting a value, the value of the Company will be based on the fair market value appraisal of all Company assets (less liabilities) determined in accordance with generally accepted accounting principles (GAAP). This appraisal will be conducted by an independent accounting firm agreed to by all Members. An appraiser will be appointed within a reasonable period of the date of withdrawal or dissolution. The results of the appraisal will be binding on all Members. The intent of this section is to ensure the survival of the Company despite the withdrawal of any individual Member.

## Dissolution

41. The Company may be dissolved by the Members.

42. Upon Dissolution of the Company and liquidation of Company property, and after payment of all selling costs and expenses, the liquidator will distribute the Company assets to the following groups according to the following order of priority:

    a.    in satisfaction of liabilities to creditors except Company obligations to the Member;

    b.    in satisfaction of Company debt obligations to the Member; and then

    c.    to the Member based on Member financial interest, as set out in the Valuation of Interest section of this Agreement.

## Records

43. The Company will at all times maintain accurate records of the following:

    a.    Information regarding the status of the business and the financial condition of the Company.

    b.    A copy of the Company federal, state, and local income taxes for each year, promptly after becoming available.

    c.    Name and last known business, residential, or mailing address of each Member and Manager, as well as the date that person became a Member or Manager.

d.	A copy of this Agreement and any articles or certificate of formation, as well as all amendments, together with any executed copies of any written powers of attorney pursuant to which this Agreement, articles or certificate, and any amendments have been executed.

e.	The cash, property, and services contributed to the Company by each Member, along with a description and value, and any contributions that have been agreed to be made in the future.

44.	Each Member has the right to demand, within a reasonable period of time, a copy of any of the above documents for any purpose reasonably related to their interest as a Member of the Company, at their expense.

45.	Each Manager has the right to examine the above documents for any purpose reasonably related to their position as Manager of the Company.

**Books of Account**

46.	Accurate and complete books of account of the transactions of the Company will be kept in accordance with generally accepted accounting principles (GAAP) and at all reasonable times will be available and open to inspection and examination by the Member. The books and records of the Company will reflect all the Company's transactions and will be appropriate and adequate for the business conducted by the Company.

**Banking and Company Funds**

47.	The funds of the Company will be placed in such investments and banking accounts as will be designated by the Member. All withdrawals from these accounts will be made by the duly authorized agent or agents of the Company as appointed by the Member. Company funds will be held in the name of the Company and will not be commingled with those of any other person or entity.

**Audit**

48.	The Member will have the right to request an audit of the Company books. The cost of the audit will be borne by the Company. The audit will be performed by an accounting firm acceptable to the Member. Not more than one (1) audit will be required by the Member for any fiscal year.

**Tax Treatment**

49.	This Company is intended to be treated as a Limited Liability Company, for the purposes of Federal and State Income Tax.

## Annual Report

50. As soon as practicable after the close of each fiscal year, the Company will furnish to the Member an annual report showing a full and complete account of the condition of the Company including all information as will be necessary for the preparation of the Member's income or other tax returns. This report will consist of at least:

   a. A copy of the Company's federal income tax returns for that fiscal year.

## Goodwill

51. The goodwill of the Company will be assessed at an amount to be determined by appraisal using generally accepted accounting principles (GAAP).

## Governing Law

52. The Members submit to the jurisdiction of the courts of the State of Maryland for the enforcement of this Agreement or any arbitration award or decision arising from this Agreement.

## Force Majeure

53. A Member will be free of liability to the Company where the Member is prevented from executing their obligations under this Agreement in whole or in part due to force majeure, such as earthquake, typhoon, flood, fire, and war or any other unforeseen and uncontrollable event where the Member has communicated the circumstance of the event to any and all other Members (if any) and where the Member has taken any and all appropriate action to satisfy his duties and obligations to the Company and to mitigate the effects of the event.

## Forbidden Acts

54. No Member may do any act in contravention of this Agreement.

55. No Member may permit, intentionally or unintentionally, the assignment of express, implied or apparent authority to a third party that is not a Member of the Company.

56. No Member may do any act that would make it impossible to carry on the ordinary business of the Company.

57. No Member will have the right or authority to bind or obligate the Company to any extent with regard to any matter outside the intended purpose of the Company.

58. No Member may confess a judgment against the Company.

59. Any violation of the above forbidden acts will be deemed an Involuntary Withdrawal and may be treated accordingly by the Member.

### Indemnification

60. The Members will be indemnified and held harmless by the Company from and against any and all claims of any nature, whatsoever, arising out of a Member's participation in Company affairs. A Member will not be entitled to indemnification under this section for liability arising out of gross negligence or willful misconduct of the Member or the breach by the Member of any provisions of this Agreement.

### Liability

61. A Member or any employee will not be liable to the Company or to any other Member for any mistake or error in judgment or for any act or omission believed in good faith to be within the scope of authority conferred or implied by this Agreement or the Company. The Member or employee will be liable only for any and all acts and omissions involving intentional wrongdoing or gross negligence.

### Liability Insurance

62. The Company will acquire insurance on behalf of any Member, employee, agent or other person engaged in the business interest of the Company against any liability asserted against them or incurred by them while acting in good faith on behalf of the Company.

### Life Insurance

63. The Company will have the right to acquire life insurance on the lives of any or all of the Member(s), whenever it is deemed necessary by the Company. Each Member will cooperate fully with the Company in obtaining any such policies of life insurance.

### Actions Requiring Unanimous Consent

64. The following actions will require the consent of the Member:

    a. Incurring Company liabilities over $25,000.00.

    b. Incurring a single transaction expense over $25,000.00.

    c. Endangering the ownership or possession of Company property including selling, transferring or loaning any Company property or using any Company property as collateral for a loan.

    d. Releasing any Company claim except for payment in full.

### Amendment of this Agreement

65. No amendment or modification of this Agreement will be valid or effective unless in writing and signed by the Member(s).

### Title to Company Property

66.     Title to all Company property will remain in the name of the Company.


### Miscellaneous

67.     Time is of the essence in this Agreement.


68.     This Agreement may be executed in counterparts.

69.     Headings are inserted for the convenience of the Member only and are not to be considered
        when interpreting this Agreement. Words in the singular mean and include the plural and vice
        versa. Words in the masculine gender include the feminine gender and vice versa. Words in a
        neutral gender include the masculine gender and the feminine gender and vice versa.

70.     If any term, covenant, condition or provision of this Agreement is held by a court of competent
        jurisdiction to be invalid, void or unenforceable, it is the Member's intent that such provision be
        reduced in scope by the court only to the extent deemed necessary by that court to render the
        provision reasonable and enforceable and the remainder of the provisions of this Agreement will
        in no way be affected, impaired or invalidated as a result.

71.     This Agreement contains the entire agreement between the Member(s). All negotiations and
        understandings have been included in this Agreement. Statements or representations that may
        have been made by any Member during the negotiation stages of this Agreement, may in some
        way be inconsistent with this final written Agreement. All such statements have no force or
        effect in respect to this Agreement. Only the written terms of this Agreement will bind the
        Members.

72.     This Agreement and the terms and conditions contained in this Agreement apply to and are
        binding upon each Member's successors, assigns, executors, administrators, beneficiaries, and
        representatives.

73.     Any notices or delivery required here will be deemed completed when hand-delivered, delivered
        by agent, or seven (7) days after being placed in the post, postage prepaid, to the Member(s) at the
        addresses contained in this Agreement or as the Member(s) may later designate in writing.

74.     All of the rights, remedies and benefits provided by this Agreement will be cumulative and will
        not be exclusive of any other such rights, remedies and benefits allowed by law.

## Definitions

75.    For the purpose of this Agreement, the following terms are defined as follows:

a.    "Additional Contribution" means Capital Contributions, other than Initial Contributions, made by Member(s) to the Company.

b.    "Capital Contributions" means the total amount of cash, property, or services contributed to the Company by any Member(s).

c.    "Distribution" means a payment of Company profits to the Member(s).

d.    "Initial Contributions" means the initial Capital Contributions made by the Member(s) to acquire an interest in the Company.

e.    "Member's Interests" means the Member's collective rights, including but not limited to, the Member's right to share in profits, Member's right to a share of Company assets on dissolution of the Company, Member's voting rights, and Member's rights to participate in the management of the Company.

f.    "Net Profits or Losses" means the net profits or losses of the Company as determined by generally accepted accounting principles (GAAP).

g.    "Operation of Law" means rights or duties that are cast upon a party by the law, without any act or agreement on the part of the individual, including, but not limited to, an assignment for the benefit of creditors, a divorce, or a bankruptcy.

h.    "Principal Office" means the office whether inside or outside the State of Maryland where the executive or management of the Company maintain their primary office.

i.    "Voting Members" means the Members who belong to a membership class that has voting power. Where there is only one class of Members, then those Members constitute the Voting Members.

**IN WITNESS WHEREOF** the Members have duly affixed their signature on this 4th day of January 2022.


Michael Postal


Anjon Jones