Sam J. Alberts (DC Bar # 443260)
DENTONS US LLP
1900 K Street, NW
Washington, DC 20006
Tel: (202) 408-7004
Email: sam.alberts@dentons.com

Elysa Chew (*pro hac vice* motion to be filed)
DENTONS US LLP
233 S. Wacker Drive, #5900
Chicago, IL 60606
Tel: (312) 876-8000
Email: elysa.chew@dentons.com

Wes P. Henderson, Esq. (DC Bar #502935)
Patrick D. Gardiner, Esq. (DC Bar #1630864)
HENDERSON LAW, LLC
2127 Espey Court, Suite 204
Crofton, Maryland 21114
T: (410) 721-1979
F: (410) 721-2258
Email: wph@hendersonlawllc.com
Email: patrick@hendersonlawllc.com

*Co-Counsel for Movant*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| In re:<br><br>Swain Landing LaPlata JC, LLC<br><br>Debtor. | Case No. 25-184-ELG<br><br>Chapter 11 |

### MOTION SEEKING ENTRY OF AN ORDER REQUIRING THE FILING OF A DISCLOSURE STATEMENT

White Pearl, LLC ("White Pearl" or "Movant"), a 50% member of the Debtor and/or creditor with a claim of no less than $585,000, hereby files this Motion ("Motion") pursuant to §§ 1125, 1181(b) and 105 of title 11 of the United States Code (the "Bankruptcy Code")[1] respectfully requesting entry of an order[2] requiring the filing of a disclosure statement, and in support, states as follows:

---

[1] All references to "§" or chapter herein are references to the Bankruptcy Code, unless otherwise stated.
[2] A form of proposed order is filed herewith.

**BACKGROUND**

1. On May 15, 2025 (the "Petition Date"), Swain Landing LaPlata JC, LLC (the "Debtor") filed for voluntary relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Columbia (the "Court"), designated itself a "small business debtor" as that term is defined in 11 U.S.C. § 101(51D), and elected to proceed under subchapter V of chapter 11 of the Bankruptcy Code.

2. On July 21, 2025, the Debtor filed *Swain Landing LaPlata JC LLC's Subchapter V Plan of Reorganization* [Docket No. 34] (the "Plan").[3] The Plan has not been amended.

3. On November 12, 2025, the Court conducted a status conference with respect to the Plan (the "Status Conference"). At the Status Conference, the Court and parties discussed the timing of various deadlines related to the Plan, including filing an amended Plan and a request for a disclosure statement under § 1181(b), which were agreed upon as November 28, 2025, and December 8, 2025, respectively. Movant understands that the Debtor uploaded a proposed Scheduling Order with these dates, although no formal order appears to have been entered on the docket.

4. Prior to and after the Status Conference, Movant, together with Ms. Claudia Engelhorn ("Ms. Engelhorn"), in her individual capacity and as trustee for the Whitewater Revocable Trust, dated September 30, 2021, as amended (the "Trust" and, together with Movant and Ms. Engelhorn, the "Plaintiffs"), have taken steps in this chapter 11 case and in the adversary proceeding styled as *Engelhorn, et al. v. Bolog, et al.*, Adv. Pro. No. 25-10044 (the "Adversary Proceeding") to narrow issues in dispute before this Court.

---

[3] Capitalized terms used but not otherwise defined herein shall have the meaning given to them in the Plan.

5.      For example, on October 30, 2025, Plaintiffs filed a *Motion for Leave to File an Amended Complaint* [Adv. Pro. Docket No. 79] (the "Motion to Amend"), which seeks to dismiss any claim or cause of cause of action involving Swain Landing as it relates to the third party defendants.[4] A hearing on the Motion to Amend is scheduled for January 6, 2026, although Movant believes the Motion will be resolved by stipulation and agreed order prior to the hearing. Also pending before the Court for hearing on January 6, 2026, is a *Renewed Motion for Remand and/or Abstention* [Adv. Pro. Docket No. 87] (the "Renewed Remand Motion"), which is predicated in part on the narrowed scope of the Adversary Proceeding, as well as a *Motion to Stay Discovery or in the Alternative Motion for Protective Order* [Adv. Pro. Docket No. 81] (the "Discovery Stay Motion").

6.      On November 18, 2025, Movant filed an amendment to its proof of claim to clarify its position that any claim it holds is based upon its undisputed transfer of $585,000 for a 50% membership interest in the Debtor. *See*, Claim No. 4-2. Contemporaneously, with White Pearl's filing of its amended claim, Ms. Engelhorn and the Trust withdrew their proofs of claim. *See*, Docket Nos. 74-76.

## ARGUMENT

1.      Movant appreciates that subchapter V normally permits a debtor to proceed to confirmation without the filing of a disclosure statement. In fact, Movant would have preferred not to have filed this Motion and to have had its concerns addressed through Plan amendment and Debtor disclosures. However, no amended Plan was filed by November 28, 2025, and Movant understands that no amended Plan is forthcoming.

---

[4] Previously, Swain Landing was dismissed from the Adversary Proceeding.

2. Moreover, White Pearl has attempted to address its questions about the Plan through informal and formal discovery. Although such interactions have been polite, they have yet to yield clarity or closure. Given the importance of the open questions and issues, and in light of the December 8, 2025, deadline to request the filing of a disclosure statement, Movant felt compelled to file this Motion both for practical concerns and to assure that its right to contest Plan confirmation on the basis of insufficient information was not deemed waived. Accordingly, Movant respectfully requests this Court find that cause exists under Bankruptcy Code § 1181(b) to make § 1125 applicable in this chapter 11 case, thereby requiring the Debtor to file a disclosure statement that contains adequate information.

3. Section 1181(b) states that "[u]nless the court for cause orders otherwise … section[] 1125 of this title do[es] not apply in a case under this subchapter." 11 U.S.C. § 1181(b). The inapplicability of § 1125 means that subchapter V debtors are not required to file a separate disclosure statement. *See*, *e.g.*, *In re Trinity Family Practice & Urgent Care PLLC*, 661 BR. 793, 810 (Bankr. W.D. Tex. 2024) (noting that a disclosure statement is not required in a subchapter V case). However, courts may require a disclosure statement where cause exists to do so.

4. "Cause" exists in this case to require a disclosure statement to gain clarity on two key issues: (1) what role the Movants and other equity holders of the Debtor play post-confirmation; and (2) how is the Plan feasible? The Movants will address each of these in turn.

**A. Cause Exists to Require a Disclosure Statement Because it is Unclear What White Pearl's and other Equity Holders' Rights and Role will be Post-Confirmation.**

5. A disclosure statement is necessary to illuminate what rights and role White Pearl, will have post-confirmation.

6. First, it is not entirely clear whether the Debtor perceives White Pearl to be an equity holder, creditor or both. Class 2 Equity Interests are not named. However, based upon the

4

Debtor's schedules, and statements made both on and off the record, White Pearl is a 50% membership in Swain Landing. *See*, Statement of Financial Affairs [Docket No. 1], Part 13. Under the Plan Section 4.01, White Pearl (and the other Plaintiffs who have withdrawn their claims) is listed as a Class 1 Claimant based upon the Adversary Proceeding, which no longer includes Swain Landing. The Plan should clarify this point.

7. Second, the Plan fails to describe what role and rights members have under the Plan. Although the Plan contains a cursory mention that equity holders will retain their membership post-confirmation, which in the event of a sale "will be diluted *pari passu[]*," the Plan does not include assurances that the rights and remedies of the members will continue post-effective date including on such critical issues as funding and sale. As a putative equity holder, Movant has significant, valid questions about what its treatment will be in the Plan and what role it will play in decision making under a confirmed Plan.

8. Moreover, it is unclear from the Plan which operating agreement the Debtor believes governs the Debtor and its members. As the Court may recall, the Debtor's petition in bankruptcy relies on the operating agreement dated January 3, which lists White Pearl as the 50% member, but the Debtor also has referenced another operating agreement between the two other members that does not include White Pearl. Further, White Pearl is scheduled as both a 50% member and a creditor. *See* Petition [Docket No. 1], Official Form 204, Schedule E/F, Part 3.2.[5] If for any reason White Pearl is not a member, it is a creditor with a claim of no less than $585,000.

---

[5] Based upon the Debtor's claim register, the only person or entity other than White Pearl to have filed a proof of claim is Erik Bolog, whose claim is predicated on indemnification and contribution for liability based on the Adversary Proceeding. Because the Adversary Proceeding is being amended to eliminate any claim against Mr. Bolog and other parties based upon Swain Landing, it is difficult to see how Bolog's claim, which is based upon a contingency, is not subject to disallowance given the removal of that contingency.

5

9. While Movant has attempted to gain clarity on these issues through informal and formal discovery, the Debtor has not provided sufficient clarity and the issues remain open. Accordingly, Movant believes that this Court should enter an order determining that § 1125 is applicable in this case, thus requiring the Debtor to file a disclosure statement, specifically addressing the intended role of equity holders.

**B.    Cause Exists to Require a Disclosure Statement Because there are Fundamental Issues with Plan Feasibility.**

10. Under § 1129(a)(11) a plan is considered feasible if it has reasonable assurances of success. *In re Heron, Burchette, Ruckert & Rothwell*, 148 B.R. 660, 684 (Bankr. D.C. 1992); *see also In re Clarkson*, 767 F.2d 417, 420 (8th Cir. 1985) ("The feasibility test requires the court to evaluate 'the probability of actual performance of the provisions of the plan … The test is whether the things which are to be done after confirmation can be done as a practical matter under the facts.'" (quoting *In re Bergman*, 585 F.2d 1171, 1179 (2d Cir. 1978))).

11. Because a disclosure statement is required to contain "adequate information,"[6] a disclosure statement would be beneficial in this chapter 11 case to describe the functionality of the Plan more fully. There are several elements of the Plan that are currently speculative and that would benefit from further explanation in a disclosure statement.

   *1.    The Avoidance Action Against the Swains*

12. Since the onset of this case, the Debtor has acknowledged that (i) it is not operating and has no tangible assets, and (ii) the purpose of this Case is to pursue an avoidance action against Catherine and Percy Swain (the "Swains") for return of real property located at 10524 La Plata Road, La Plata, Maryland 20646 (the "Property"), which the Debtor hopes to develop and sell. Plan at (b).

---

[6] 11 U.S.C. § 1125(a)(1).

13. Accordingly, the Debtor's reorganization is predicated on successfully prosecuting an avoidance action in order to have any proceeds to distribute in this Case. However, the Debtor does not wish to simply sell the Property, if recovered, but to obtain sufficient funding — either through debt or equity — to develop and resell the Property for a profit.

14. As such, the Plan depends on several contingencies, including prevailing on the avoidance action against the Swains — an outcome that is far from certain at the time of this Motion — then obtaining refinancing or other funding, and then developing the Property for profit.

15. At the current juncture, the speculative nature of recovery of the Property would benefit from further explanation in a disclosure statement. Has the Debtor "done the math" about its likelihood of success on its strategy? Moreover, what role will White Pearl, which holds a 50% membership interest in the Debtor and contributed significantly more money than the other two members, have in these decisions? Similarly, what are the alleged causes of action the Debtor suggests may lie against White Pearl under the Plan? Plan at § 9.04. Such questions are critical for White Pearl, and any other party permitted to vote on the Plan, to understanding the Plan, determine whether to vote in favor of or against the Plan, and decide on whether to support or object to the Plan. At present, however, such questions remain unanswered and should be expanded upon in a disclosure statement.

16. As it stands, the lack of information and the speculative recovery renders the Plan not feasible. *See, e.g.*, *In re Woody's Enterprises, Inc.*, No. 2010 WL 481264, at *1 (Bankr. E.D.N.C. Feb. 3, 2010) (finding that a debtor's plan was not feasible when the submitted projected revenues depended, in part, on the receipt of insurance proceeds, which receipt was "speculative at best."). "A plan will not be feasible if its success hinges on future litigation that is uncertain and speculative, because success in such cases is only possible, not reasonably likely." *In re WR Grace*

7

*& Co.*, 729 F.3d 332, 348–49 (3d Cir. 2013) (stating court will not find plan feasible if it hinges on speculative litigation); *In re American Capital Equip.*, LLC, 688 F.3d 145, 156, 67 C.B.C.2d 1701 (3d Cir. 2012); *In re Slabbed New Media, LLC*, 557 B.R. 911, 916–17 (Bankr. S.D. Miss. 2016) (citing numerous cases suggesting plans relying on litigation proceeds are not feasible).

17.     Given how critical the avoidance action is to this bankruptcy case and the Plan, there should be a much clearer picture of how it will be resolved before the Plan can be confirmed, and the Debtor could provide such a picture in a disclosure statement.

### 2.     *The Ryan Homes Contract*

18.     According to the Plan, the Debtor intends to assume the contract it had prepetition with NVR, Inc. d/b/a Ryan Homes ("Ryan Homes"). *See* Plan at § 6.01.

19.     In fact, the entire Plan assumes that the Debtor will be able to develop the Property sufficient for Ryan Homes to buy the 83 lots it was slated to purchase prepetition, which, importantly, is not projected to occur until year three. *See* Plan Ex. A. However, there is no additional information provided regarding the Ryan Homes contract. It is not attached as an exhibit to the Plan, and, to the Movant's knowledge, it is not attached to any other pleading filed on this Court's docket.

20.     Through formal discovery, Movant received a copy of the Ryan Homes contract; however, such receipt has raised further questions which could be addressed *via* a disclosure statement. For example, the contract was signed in June 2022, which makes all dates contained therein relative to a date that was over three years ago. As such, Movant questions whether the contract is still effective and if so, what amounts (if any) are owed under it for cure? Further, given the extended period of time since the effective date of the Ryan Homes contract and the future speculative performance date, what rights does Ryan Homes have to terminate the contract and/or

8

what communications have there been with Ryan Homes that would indicate whether it intends to exercise those rights or continue forward with the contract? Similarly, there are no assurances in the Plan from Ryan Homes that it *is* still willing to buy the lots or otherwise execute on the contract. Again, the success of the Plan rests on Ryan Homes eventually purchasing 83 lots, but the Debtor has provided nothing to prove that Ryan Homes is likely to close on this purchase at the price it was willing to pay prepetition or even at all.

21. Given how essential the Ryan Homes contract is to the success or failure of the Plan, Movant believes that it is critical to provide this Court and parties in interest more information regarding the Ryan Homes contract. Accordingly, the Movants respectfully request this Court enter an order determining § 1125 applicable to this chapter 11 case and require the Debtor to file a disclosure statement that contains adequate information.

### 3. Funding

22. Funding is particularly important to the feasibility requirement under § 1129(a)(11). *See* 7 Collier on Bankruptcy P 1129.2[11]. "To establish the feasibility of a plan, the debtor must present proof through reasonable projections that there will be sufficient cash flow to fund the plan. Such projections cannot be speculative, conjectural or unrealistic." *In re Idearc Inc.*, 423 B.R. 138, 167 (Bankr. N.D. Tex. 2009); *see also In re M & S Assocs., Ltd.*, 138 B.R. 845, 849 (Bankr. W.D. Tex. 1992) ("Income projections offered in support of reorganization plans 'must be based on concrete evidence of financial progress, and must not be speculative, conjectural or unrealistic.'" (citation omitted)).

23. The Debtor's assurances that it will use "commercially reasonable efforts to raise funds with which to continue development of the [Property]"[7] are not sufficient. Rather, the

---

[7] Plan at Article 7.

9

Debtor's future funding is, at this point, merely speculative. There is no commitment from the Debtor's manager or any other outside source to provide additional funding. The Plan attempts to assuage concerns about future funding by insisting that "Mr. Postal maintains a healthy array of connections in the real estate development community, and, as such, is confident he will be able to procure an appropriate equity or debt partner to contribute funds to complete development of the [Property]." Plan at Article 7. However, legitimate concerns exist with respect to Mr. Postal's business history.[8] Moreover, it is unclear what experience Mr. Postal has with respect to real estate development.[9]

24. Therefore, the Plan is based on speculation and conjecture. There is nothing in the Plan to assure this Court that the Debtor will be able to procure additional funds to complete the development of the Property. The Debtor has not provided a list of potential sources of additional capital, and there is no indication that the Debtor will be able to procure additional funds.

25. A disclosure statement that actually does the math on funding, including how much the Debtor projects development of the Property will cost, would be beneficial to this Court and to parties in interest. Without additional detail on the sources and amount of funding, the Plan remains merely speculative and unconfirmable.

26. Accordingly, Movant respectfully requests that this Court enter an order applying §§ 1125 and 1181(b) to this Case and requiring the Debtor to file a disclosure statement with adequate information.

---

[8] Mr. Postal is also deeply involved in the management of another group of chapter 11 debtors currently pending before this Court called *In re Banner of Abingdon, LLC et al*, Case 25-378-ELG.

[9] It may be that the Debtor could benefit from an outside advisor or alternative manager, although such may be able to wait until post-confirmation, provided members retain their right to vote as members, which should be the case.

10

WHEREFORE, Movant respectfully requests that this Court issue an order (i) applying §§ 1125 and 1181(b) to this Case and requiring the Debtor to file a disclosure statement in relation to the Plan; and (ii) granting Movant such other and further relief to which it is entitled.

Dated: December 8, 2025

/s/ *Sam J. Alberts*
Sam J. Alberts (DC Bar # 443260)
**DENTONS US LLP**
1900 K St. NW
Washington, DC 20006
202-496-7500
sam.alberts@dentons.com

Elysa Chew (*pro hac vice* motion to be filed)
**DENTONS US LLP**
233 S. Wacker Drive, #5900
Chicago, IL 60606
Tel: (312) 876-8000
Email: elysa.chew@dentons.com

-and-

Wes P. Henderson
Patrick D. Gardiner
**HENDERSON LAW, LLC**
2127 Espey Court, Suite 204
Crofton, Maryland 21114
410-721-2258
wph@hendersonlawllc.com
patrick@hendersonlawllc.com

*Attorneys for Movant*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 8th day of December 2025 a copy of the foregoing was served electronically upon filing via the ECF system, with copies being sent to all parties receiving electronic notice herein.

*/s/ Sam J. Alberts*
Sam J. Alberts