Maurice B. VerStandig, Esq.
Bar No. MD18071
The Belmont Firm
1050 Connecticut Avenue, NW
Suite 500
Washington, DC 20036
Phone: (202) 991-1101
mac@dcbankruptcy.com
*Counsel for the Debtor*

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| In re: | ) | Case No. 25-184-ELG |
| | ) | (Chapter 11) |
| Swain Landing LaPlata JC, LLC | ) | |
| | ) | |
| Debtor. | ) | |

**OPPOSITION TO MOTION SEEKING ENTRY OF AN
<u>ORDER REQUIRING THE FILING OF A DISCLOSURE STATEMENT</u>**

Comes now Swain Landing LaPlata JC, LLC ("Swain" or the "Debtor"), in opposition to the Motion Seeking Entry of an Order Requiring the Filing of a Disclosure Statement (the "Motion"), DE #77, filed by White Pearl, LLC ("White Pearl" or the "Movant"), and states as follows:

**I.    Introduction**

In the history of this Honorable Court, there exists no reported—or searchable unreported—opinion in which a Subchapter V debtor has been ordered to file a disclosure statement. And for good reason: Title 11 of the United States Code (the "Bankruptcy Code") furnishes specific provisions that essentially merge the most pertinent parts of a disclosure statement with the mandatory contents of a Subchapter V plan of reorganization, all-but-mooting the need for any such filing. Yet White Peal—an enormously sophisticated creditor in one of the most heavily-lawyered small business reorganizations to visit Constitution Avenue—now suggests

1

history ought to be altered and Swain should be required to expend the time and resources requisite to file, and then seek approval of, a disclosure statement in this case.

White Pearl's request is at-best misguided. Much of the information demanded by the Motion is already present in Swain's plan of reorganization (the "Plan"), DE #34. The other qualms expressed by the Movant are not in the nature of challenges to the sufficiency of information but, rather, assaults upon confirmation of the Plan and the detail, *vel non*, of various provisions thereof. These are points that, rather familiarly, are properly reserved for a hearing on confirmation, not the creation of a procedural roadblock en route to confirmation. And at least one of the putative issues raised by White Pearl has already been addressed—and ruled upon—by this Honorable Court.

For these reasons, and as extrapolated upon *infra*, the Motion merits denial.

II.     **Argument: A Disclosure Statement Would be Inappropriate in the Instant Case**

    a.  **The Plan Contains Adequate Information**

The initial argument advanced by White Pearl is that the Plan lacks sufficient information as to the rights of various parties post-confirmation and, ergo, a disclosure statement should be docketed. Yet there are two fundamental problems with this argument: (i) the Plan, alongside governing law, clearly provides for the rights of parties post-confirmation; and (ii) a disclosure statement is not an appropriate vehicle through which to expand upon the impactful allowances of a plan of reorganization in any event.

Initially, it bears notation that the absence of disclosure statements in Subchapter V cases is a carefully-crafted Congressional allowance counterbalanced by the mandate that plans contain rather specific fodder:

> In exchange for this less expensive and quicker path to confirmation of a chapter 11 plan, subchapter V requires certain information that would normally be found in

2

>a disclosure statement to instead be incorporated into the plan. Specifically, Bankruptcy Code section 1190(1) requires that a plan include:
>
>>(A) a brief history of the business operations of the debtor;
>>
>>(B) a liquidation analysis; and
>>
>>(C) projections with respect to the ability of the debtor to make payments under the proposed plan of reorganization.

*In re United Safety & Alarms, Inc.*, 2024 Bankr. LEXIS 540, *1-2 (Bankr. S.D. Fla. 2024) (quoting 11 U.S.C. § 1190(1)). *See also In re Pearl Res. LLC*, 622 B.R. 236, 259 (Bankr. S.D. Tex. 2020) (". . . in a subchapter V case, a separate disclosure and solicitation of votes is not required, nor did this Court order that Debtors file a separate disclosure statement. All that is required in a subchapter V plan is that the debtor include a brief history of its business operations, a liquidation analysis, and projections with respect to the ability of the debtor to make payments under the proposed plan of reorganization.") (citing 11 U.S.C. § 1187(c); 11 U.S.C. § 1190(1*)); In re Channel Clarity Holdings LLC*, 2022 Bankr. LEXIS 2408, at *13 (Bankr. N.D. Ill. July 19, 2022) ("A plan filed in a chapter 11 case under subchapter V need not be accompanied by a separate disclosure statement unless the court rules otherwise. However, section 1190 does identify information that must be included in every subchapter V plan.") (citing 11 U.S.C. § 1187(c)); *In re Remarkable Healthcare LLC & Remarkable Healthcare of Seguin, LP*, 2025 Bankr. LEXIS 511, at *31 (Bankr. E.D. Tex. Mar. 4, 2025) (". . . a separate disclosure statement is not required unless ordered by the bankruptcy court. Instead, subchapter V collapses the two-part disclosure statement and plan process into one by requiring the plan to contain certain information. Section 1190(1) of the Bankruptcy Code requires a proposed plan to include (i) a brief history of the business operations of the debtor; (ii) a liquidation analysis, and (iii) projections with respect to

3

the ability of the debtor to make payments under the proposed plan of reorganization.") (citing 11 U.S.C. § 1181(b); 11 U.S.C. § 1190(1)).[1]

There is no suggestion, in the Motion, that the Debtor's Plan does not contain any of the three items mandated by Section 1190. And, to be sure, the Plan sets forth (i) a brief history of Swain, *see* Plan, DE #34, at pp. 1-2; (ii) a liquidation analysis, *id.* at pp. 3-4; and (iii) financial projections, *see* Exhibit A to Plan, DE #34-1, *passim*.

White Pearl, however, suggests the Plan must contain more. The Movant first urges the Plan must clarify if White Pearl is a creditor or an equity holder. *See* Motion, DE #77, at ¶ 6. Putting aside that such is not nearly required of a Subchapter V plan, *see* 11 U.S.C. § 1190(1), White Pearl seems to miss that the Movant is clearly identified as both an undisputed equity holder *and* a disputed creditor. *See* Plan, DE #34, at § 4.01 (noting White Pearl to purport to hold a debt claim and discussing the nature of that claim and the Debtor's dispute thereof); § 4.02 ("The Debtor's Class 2 equity holders are (i) Mr. Postal; (ii) POJO LaPlata LLC; and (iii) White Pearl. Each such equity holder shall retain its ownership interest as reflected on statement of financial affairs filed by Swain Landing.") (citation to docket omitted); § 5.04 (noting the Debtor intends to dispute the claim of White Pearl); § 5.02 (providing for the delay of distributions to holders of disputed claims). The Plan even goes on to expressly provide what will happen if White Pearl is successful in having an allowed debt claim: "However, should White Pearl succeed in litigation

---

[1] Additionally, it bears observation that Official Form 425A governs the provisions of a Subchapter V plan, *see* Official Form 425A, and the Debtor is required—by rule—to hew to the contours of this form, *see* Fed. R. Bankr. P. 9009(a). Not coincidentally, the form provides for inclusion of the information called for by Section 1190(1). *See* Official Form 425A.

4

that contends that entity's capital contribution to, instead, have been a debt offering, the equity composition of Swain Landing will be adjusted in accord with said judgment." *Id.*[2]

The Movant next protests that the Plan does not "describe what role and rights members have under the Plan." Motion, DE #77, at ¶ 7. This is true: the Plan does not gratuitously set forth a description of the Maryland Limited Liability Company Act, Md. Code Ann., Corps. & Ass'ns § 4A-101, *et seq.*, or the rights and obligations of limited liability company members thereunder. Yet it is altogether unclear why the Plan would do so. The reorganized Debtor will be an entity subject to applicable law, just like any other entity, and the relations of its members will be governed just as are those of any other comparable entity. The Plan does not purport to inhibit the activities of members, or to alter their respective rights and remedies under governing law; a disclosure statement would do nothing to alter this reality.

Remarkably, White Pearl next inquires as to which operating agreement iteration governs the Debtor. *See* Motion, DE #77, at ¶ 8. This is peculiar insofar as this Honorable Court has already received evidence, and ruled, on the question of which operating agreement governs the Debtor. *See* Order Denying Motion to Dismiss Case, DE #69. *See also Crocker v. Piedmont Aviation*, 49 F.3d 735, 739 (D.C. Cir. 1995) ("'Law-of-the-case doctrine' refers to a family of rules embodying the general concept that a court involved in later phases of a lawsuit should not re-open questions decided (i.e., established as the law of the case) by that court or a higher one in earlier phases.")

---

[2] If the Movant's position is that by dismissing this litigation, post-petition, White Pearl has unilaterally created a need for the Debtor to furnish more extensive information, such would appear to violate the chutzpah doctrine. *See, e.g.*, *Harbor Ins. Co. v. Schnabel Found. Co.*, 946 F.2d 930, 937 n.5 (D.C. Cir. 1991) (defining "chutzpah" as "a young man, convicted of murdering his parents, who argues for mercy on the ground that he is an orphan.") (citing *Northwest Airlines, Inc. v. Air Line Pilots Ass'n, Int'l*, 808 F.2d 76, 83 (D.C. Cir. 1987)).

Yet even if the subject were not one already resolved by this Honorable Court, the same underpinning inquiry would persist: why would questions of forward-looking corporate governance be required to be resolved through a disclosure statement, when such topics are not mandated of a Subchapter V plan in the first instance?

That somewhat-rhetorical inquiry also speaks to the bigger issue with these grievances of White Pearl: a disclosure statement does not—and, indeed, cannot—supplant or otherwise add to the provisions of a plan of reorganization. Rather, a disclosure statement can only offer insight into the provisions already present in a plan of reorganization, their interplay with the nature and history of a debtor, the condition of a debtor's books and records, tax consequences, and such other information as would aid in the formation of an informed vote upon approval of a plan. 11 U.S.C. § 1125(a)(1). A disclosure statement does not bring new allowances to a plan; a disclosure statement simply discloses information that is relevant to understanding what is already contained in a plan. *See, e.g.*, *In re Bridgepoint Nurseries*, 190 B.R. 215, 222 (Bankr. D.N.J. 1996) ("Furthermore, Amboy did not cite a single case standing for the proposition that a disclosure statement binds creditors and debtors as does a confirmed reorganization plan. To the contrary, this court finds that a disclosure statement is not a binding contract and has no res judicata or collateral estoppel effect on the court and cannot bind the parties for the reasons stated below.").

Thusly, to the extent White Pearl is suggesting a disclosure statement is needed to append material provisions concerning the forward-looking relations between and amongst the Debtor's members, or even to provide for the treatment of one class or another, such is in manifest error. This information is either already in the Plan or not present in the Plan. If the Bankruptcy Code requires such information to be present, and the information is missing, White Pearl may well have a compelling argument against confirmation. Yet if the Bankruptcy Code does not require the

presence of such information, or if the information is actually in the Plan, the Movant would seem to have little justiciable recourse.

### b. Feasibility Issues are Not Extant and Would be Reserved for Confirmation in Any Event

The Motion next attacks the feasibility of the Plan, suggesting the Debtor's reliance on success in an adversary suit (other than the one involving White Pearl), reliance on a third party contract being assumed, and need for future funding create a paradigm where the Plan is not confirmable. In so doing, White Pearl—on at least one occasion—manifestly misstates the Debtor's position (suggesting "the Debtor has acknowledged that . . . it is not operating," Motion, DE #77, at ¶ 12, when such is a demonstrably counterfactual proposition), whilst assaulting the viability of a reorganization *sub judice*. Ironically, this attack is demonstrative of the absence of a need for a disclosure statement herein.

To be sure, White Pearl (i) assails the viability of litigation in which pleadings are on the public docket, *id.* at ¶¶ 12-17; (ii) suggests issues with the assumption of a contract possessed by White Pearl, *id.* at ¶¶ 18-21; and (iii) urges the Debtor may not be able to obtain future funding, *id.* at ¶¶ 22-26.[3] A disclosure statement would not address or alter any of these gripes. *See* 11 U.S.C. § 1125(a)(1). Rather, as noted *supra*, a disclosure statement would simply expound upon the Plan's allowances—allowances the Movant clearly is already able to analyze and attack in the Motion itself.

---

[3] The Motion also asserts, *inter alia*, "A disclosure statement that actually does the math on funding, including how much the Debtor projects development of the Property will cost, would be beneficial to this Court and to parties in interest." Motion, DE #77, at ¶ 25. This is an odd argument insofar as the financial projections appended to the Plan clearly set forth the forward-looking costs of construction, alongside so-called "soft costs." *See* Exhibit A to Plan, DE #34-1, *passim*.

If White Pearl wishes to urge the Debtor is not likely to succeed in litigation that would benefit White Pearl, the Movant is free to do so at a confirmation hearing. Similarly, if White Pearl wishes to make the Debtor prove the legitimacy of a sales contract being assumed, the Movant can certainly do so at a confirmation hearing. And, yes, if White Pearl wants to argue that forward-looking financing opportunities are speculative, the Movant can do so at a confirmation hearing. But the Debtor, in turn, will have an opportunity to show why the at-issue adversary proceeding is likely to be successful on the merits, why a third party contract is likely to be honored, and why the market for funding is not illusory. These are the machinations of a confirmation fight. It is regrettable that White Pearl seems inclined to stage such a fight in this case but, equally, it is clear that the time and place for such a fight is at confirmation—not in the present prism of a debate over whether or not a disclosure statement is needed.

### III.     Conclusion

WHEREFORE, the Debtor respectfully prays this Honorable Court (i) deny the Motion; and (ii) afford such other and further relief as may be just and proper.

Respectfully submitted,

Dated: January 1, 2026     By:     /s/ Maurice B. VerStandig
Maurice B. VerStandig, Esq.
Bar No. MD18071
The Belmont Firm
1050 Connecticut Avenue, NW
Suite 500
Washington, DC 20036
Phone: (202) 991-1101
mac@dcbankruptcy.com
*Counsel for the Debtor*

*[Signature on Following Page]*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 1st day of January, 2026, a copy of the foregoing was served electronically upon filing via the ECF system, with copies being sent to all parties receiving electronic notice herein.

/s/ Maurice B. VerStandig
Maurice B. VerStandig