Maurice B. VerStandig, Esq.
Bar No. MD18071
The Belmont Firm
1050 Connecticut Avenue, NW
Suite 500
Washington, DC 20036
Phone: (202) 991-1101
mac@dcbankruptcy.com
*Counsel for the Debtor*

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| In re: | ) | Case No. 25-184-ELG |
| | ) | (Chapter 11) |
| Swain Landing LaPlata JC, LLC | ) | |
| | ) | |
| Debtor. | ) | |
| | ) | |

**MOTION TO APPROVE COMPROMISE WITH WHITE PEARL, LLC**

Comes now Swain Landing LaPlata JC, LLC ("Swain Landing" or the "Debtor"), by and through undersigned counsel, pursuant to Federal Rule of Bankruptcy Procedure 9019, and as and for its motion to approve a compromise with White Pearl, LLC ("White Pearl"), as set forth in the agreement attached hereto as Exhibit A (the "Agreement"), states as follows:

## I. Introduction

While this bankruptcy was commenced to address the loss of real estate to a state court rescission judgment, the Debtor's ongoing dispute with White Pearl—and certain affiliates thereof—has commanded outsized attention on and off the docket. It is with enormous pride the Debtor is now able to report that dispute has been resolved (subject to this Honorable Court's approval), with the Agreement offering a feasible and lucid pathway to reorganization. If approved by this Court, the Agreement will not only permit the Debtor to resolve its relationship and remaining controversies with White Pearl but, too, do so in a manner that provides for the

repayment of debt on manageable terms whilst stabilizing the ownership structure of Swain Landing in a manner that will simplify the Debtor's corporate management.

The Agreement is eminently reasonable in nature, well with the Debtor's business judgement, actively promotes the goals as title 11 of the United States Code (the "Bankruptcy Code"), and affords the Debtor a future far brighter than the past. And, for these reasons as well as those expounded upon *infra*, the Agreement is meritorious of judicial approval.

## II. Background Facts

The saga of Swain Landing, White Pearl, and other related (and unrelated) parties is, no doubt, entirely too familiar to this Honorable Court. The whole of the parties' historic dealings need not—and will not—be rehashed herein. Suffice it to posit, however, that the controversy being resolved through the Agreement is one that concerns, *inter alia*:

1. The characterization of monies paid by White Pearl, to the Debtor, with there having been a marked dispute as to whether the funds were in the nature of a loan, the purchase of a membership interest, or some hybrid combination thereof;

2. White Pearl's role in the Debtor's management, which notably invited some modicum of discord in the earliest days of this case and threatened the prosper of post-reorganizational managerial tumult;

3. The terms on which White Pearl is to be repaid its monies, with the Agreement offering a repayment, at a subprime interest rate, tailored to afford the Debtor breathing room to pursue developmental ambitions without having to make amortization payments in the interim; and

4. A dispute as to the necessity, *vel non*, of a disclosure statement in this case.

## III. Agreement Terms

While the terms of the Agreement speak for themselves, they may be aptly summarized as follows:

i. White Pearl is granted an allowed first-position secured claim, in the amount of $585,000.00, against the Debtor's estate, as memorialized by a secured promissory note (the "White Pearl Note");

ii. Payment of the White Pearl Note is deferred, *en toto*, to January 31, 2033, with the instrument accruing interest at the rate of 6% per annum;

iii. The Debtor's obligations on the White Pearl Note are subject to a carve out that covers (a) any fees owed to the United States Trustee (fees unlikely to actually inure insofar as this is a subchapter V case); (b) financing—of up to $2,600,000.00—to develop the Debtor's eponymous real estate asset; and (c) the Debtor's legal fees (not to exceed $200,000.00);

iv. White Pearl's membership interest in the Debtor terminates;

v. A new plan of reorganization that incorporates and is in no way inconsistent with the terms and purpose of the Agreement is to be proposed by the Debtor; and

vi. All other claims of the Debtor and White Pearl, against one another, are released, with the release extending to certain affiliates (with portions of the release being topically limited in nature).

## IV. Standard

The Federal Rules of Bankruptcy Procedure specifically provide for the approval of compromises and settlements upon a motion and hearing:

> On motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement. Notice shall be given to creditors, the United States trustee, the debtor, and indenture trustees as provided in Rule 2002 and to any other entity as the court may direct.

Fed. R. Bankr. P. 9019(a).

The United States District Court for the District of Columbia has previously set forth the criteria by which a motion under Federal Rule of Bankruptcy Procedure 9019 is to be evaluated:

> …a bankruptcy judge "need not hold a mini-trial or write an extensive opinion every time he approves or disapproves a settlement." While neither the Bankruptcy Code nor Bankruptcy Rule 9019 offers guidance as to the criteria a bankruptcy court applies in evaluating a proposed settlement, the parties generally agree that, following the principles of *TMT Trailer Ferry*, the bankruptcy court should consider: (1) probability of success in the litigation; (2) difficulties, if any, with collection; (3) the complexity of the litigation, including the expense, inconvenience and delay attendant to the litigation; and (4) the interest of creditors.

*Advantage Healthplan, Inc. v. Potter*, 391 B.R. 521, 554 (D.D.C. 2008), aff'd sub nom. *Greater Se. Cmty. Hosp. Found., Inc. v. Potter*, 586 F.3d 1 (D.C. Cir. 2009) (quoting *In re Fishell*, 47 F.3d 1168 (6th Cir.1995); citing *Southern Med. Arts Companies, Inc.*, 343 B.R. 250, 256 (10th Cir. BAP 2006); *In re Iridium Operating LLC*, 478 F.3d 452, 462 (2d Cir. 2007); *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 425 (1968)).

## V. Argument: The Agreement Merits Approval

The adversary proceeding to which White Pearl and Swain Landing were both parties has long-since departed this Honorable Court, with the Debtor being dismissed with prejudice and other parties having returned to the Circuit Court for Baltimore City, Maryland. Yet numerous disputes remain, concerning everything from the nature and size of White Pearl's claim to the obligations of the Debtor requisite to exit chapter 11. The Agreement resolves all of these matters in a sensible, favorable manner.

Considering the first *Advantage Healthplan* element, likelihood of success on the merits is genuinely murky. There were very real questions about the size and extent of a claim held by White Pearl, just as there were very real questions about White Pearl's potential rights under the Maryland laws governing the management of limited liability companies. The Debtor has always steadfastly

maintained such matters would resolve in a fashion favorable to Swain Landing. Yet it would be foolhardy to not acknowledge the murky, oft-contradictory historical dealings of the parties did not create some potentially hazardous impediments to reorganization.

In consideration of the difficulties with collecting, such is largely immaterial. While the Debtor did hold a somewhat complex potential claim against White Pearl, the foundation of such claim was never much animated in this bankruptcy case and White Pearl's solvency was certainly never subjected to scrutiny.

The third consideration is complexity of any ensuing litigation. Seemingly everything about this case has been complex—especially by subchapter V standards. What is being settled here is not an adversary proceeding but, rather, a claim and objection that would have been assuredly asserted and an objection to confirmation that was well previewed on the docket. The parties already endured a motion to dismiss this bankruptcy case on grounds of putative bad faith and a challenge to the Debtor's very capacity to seek to reorganize. Nothing about these past disputes was simplistic and it may be safely surmised nothing about yet-to-mature claim objections or confirmation disputes would have been simplistic in nature either.

Finally, the Agreement is clearly consistent with the best interests of creditors. This is not only a document that quells contention and shows a clear path to emergence from chapter 11; this is, too, a document that permits the Debtor to honor repayment of its most significant debt on manageable and reasonable terms. All parties in interest are best served by permitting Swain Landing to exit bankruptcy with a clear focus on developing real estate and maximizing economic returns.

## VI. Conclusion

WHEREFORE, the Debtor respectfully prays this Honorable Court (i) approve the Agreement; and (ii) afford such other and further relief as may be just and proper.

Respectfully submitted,

Dated: August 25, 2026 By: /s/ Maurice B. VerStandig

Maurice B. VerStandig, Esq.
Bar No. MD18071
The Belmont Firm
1050 Connecticut Avenue, NW, Suite 500
Washington, DC 20036
Phone: (202) 991-1101
mac@dcbankruptcy.com
*Counsel for the Debtor*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 25th day of August, 2026, a copy of the foregoing was served electronically upon filing via the ECF system, with copies being sent to all parties receiving electronic notice herein.

/s/ Maurice B. VerStandig
Maurice B. VerStandig