# SWAIN SETTLEMENT AGREEMENT

**THIS SETTLEMENT AGREEMENT** (this "Settlement Agreement") is made this 8th day of June 2026 (the "Settlement Date") by and between (1) Swain Landing La Plata JC, LLC ("Swain Landing"), by its undersigned representative Michael Postal (and referred to with Swain Landing as the "Swain Landing Parties" and each a "Swain Landing Party") and (2) White Pearl, LLC ("White Pearl"). Hereinafter, White Pearl and the Swain Landing Parties are referred to collectively as the "Parties" and each a "Party").

## RECITALS

The following recitals are incorporated by reference into the terms of settlement.

*The Swain Landing Project and Contribution*

**WHEREAS**, on or about January 6, 2022, the amount of $585,000 (the "Contribution") was transferred from an account in the name of White Pearl to Swain Landing in exchange for a 50% membership interest in Swain Landing.

**WHEREAS,** at or about the time of the Contribution, Swain Landing was involved in the purchase and development for resale of real property located at 10524 LaPlata Road, La Plata, Maryland 20646 (the "Swain Landing Project"). The premises shall be referred to as the "Real Estate.

**WHEREAS**, the Swain Landing Parties have represented that more than $400,000 of the Contribution was used to acquire ownership interest in the Real Estate, with some portion of the remaining funds from the Contribution being used for taxes and debt servicing[1];

*The DC Bankruptcy Case*

**WHEREAS**, on May 15, 2025 (the "Petition Date"), Swain Landing filed a voluntary petition for relief under subchapter V of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Columbia (the "DC Bankruptcy Court"), commencing a bankruptcy case under Bankruptcy Case No. 22-284-ELG (the "DC Bankruptcy Case");

**WHEREAS**, on August 7, 2025 (A) White Pearl timely filed a proof of claim in an amount of $725,000 plus interest, which was subsequently amended by a filing dated on November 18, 2025 to clarify the basis on which it sought damages and reduced the amount sought to $585,000 plus interest, fees and cost (the "White Pearl POC"), and (B) The Whitewater Revocable Trust dated September 30, 2021 and Claudia Engelhorn (collectively the "WP Affiliates" and referred to collectively with White Pearl as the "WP Claimants") timely filed proofs of claim seeking $725,000, which claims were subsequently withdrawn on November 18, 2025;

**WHEREAS**, the WP Claimants and all of their respective predecessors, successors, assigns. affiliates, agents and professionals are referred to as the "WP Released Parties");

---

1 The WP Claimants (as defined below) do not concede the accuracy of this representation.

*Settlement Discussions*

**WHEREAS**, the WP Claimants and the Swain Landing Parties have engaged in good faith settlement discussions;

**WHEREAS**, as a result of the settlement discussions, the WP Claimants and Swain Landing Parties desire to settle and compromise the disputes between them, on the terms set forth herein, to avoid the cost and uncertainty of further litigation; and

**NOW THEREFORE**, the Parties agree as follows:

1. Plaintiff's Secured Claim. As of the Settlement Date, the White Pearl POC shall be allowed as a fully secured claim in the amount of Five Hundred and Eighty Five Thousand Dollars and No Cents ($585,000) (the "WP Allowed Claim"), which shall not be subject to set off, recoupment, reduction, subordination or recharacterization of any reason except with respect to the Carve Out as defined in paragraph 3 below.

2. The Note. The WP Allowed Claim shall be evidenced by the terms of a note, the form of which is attached hereto as **Exhibit 1** (the "Note"). The Note shall accrue interest at 6.0% per annum beginning on February 1, 2026 and continue until it is paid in full. Subject only to the Carve Out (as defined below), the WP Allowed Claim shall be secured and perfected by a first position lien senior to all other claims, expenses and interests on all of Swain Landing's property, rights and interests (the "Lien"). The Note shall be executed on the Settlement Date. Swain Landing shall use its best efforts to assist in the recording of the Lien.

3. Carve Out. The WP Allowed Claim shall be senior in priority and amount to all other claims, expenses and interests, except the following (the "Carve Out"): a) unpaid fees (if any) of the Office of the United States Trustee for the District of Columbia related to the DC Bankruptcy Case; b) fees, interest and principal of any non-insider lender to Swain Landing approved by the Bankruptcy Court for the completion of the Swain Landing Project and development and sale of the Real Estate up to a maximum amount of Two Million Six Hundred Thousand Dollars ($2,600,000) (the "Financing"); c) reasonable unpaid fees and expenses of The Belmont Firm up to a maximum amount of $200,000 related to the completion of the DC Bankruptcy Case, including (i) management of the DC Bankruptcy Case on behalf of Swain Landing, including attendance at hearings and the filing of ordinary papers therein, alongside representation of Swain Landing in all facets of the subject bankruptcy proceeding; (ii) representation of Swain Landing in an adversary proceeding pursued to avoid a loss of the Real Estate; and (iii) all efforts correlative to confirmation of a plan that incorporates and in no way alters, affects or modifies this Settlement Agreement or its terms and is affirmatively approved by White Pearl as evidenced by the vote of White Pearl in support of confirmation thereof, which shall not be unreasonably withheld.

4. Termination of Plaintiffs Membership Interest in Swain Landing. Upon the 9019 Order (defined below) becoming a final order that is not subject to a stay pending appeal, White Pearl's 50% membership interest in Swain Landing shall terminate.

5. The Rule 9019 Motion and Bankruptcy Court Approval. Within two days from the Settlement Date, Swain Landing shall file a motion pursuant to Bankruptcy Rule 9019 seeking approval of this Settlement Agreement and all of its terms (the "9019 Motion") under a form of order reasonably acceptable to White Pearl (the "9019 Order"). Swain Landing

shall actively oppose a) any objection to the 9019 Motion and 9019 Order, and b) any attempt to stay entry of the 9019 Order. At White Pearl's option, Swain Landing shall challenge any appeal of the 9019 Motion or 9019 Order. If the Court denies entry of the 9019 Order or the 9019 Order is subject to a valid stay pending appeal, the Settlement Agreement shall be null and void and the Parties shall be returned to their respective positions.

6. DC Bankruptcy Case Plan and Activity. Within 5 days of the entry of the 9019 Order, Swain Landing shall file an amendment to the plan of reorganization filed in the DC Bankruptcy Court on or about July 21, 2025 [ECF No. 34] (as amended, the "Plan") in order to incorporate the terms of this Settlement Agreement. Swain Landing shall not take nor support any action taken and shall actively oppose any effort taken in the DC Bankruptcy Case that in any ways seeks to limits or modify the terms of this Settlement Agreement, the WP Allowed Claim and the Note.

7. Settlement Effective Date. This Settlement Agreement shall become effective on the last of the following to occur: (a) execution by both Parties; (b) the Note has been executed; (c) the Lien has been recorded; and (d) entry by the Bankruptcy Court of the 9019 Order ((a)-(d) referred to as the "Settlement Effective Date");.

8. Releases. The Parties acknowledge this Settlement Agreement is intended to fully resolve Swain Landing's liability to White Pearl and the WP Affiliates and any liability a WP Claimant may have against the Swain Landing Parties relating to the Swain Landing Project. White Pearl and the WP Affiliates expressly reserve any rights under this Settlement Agreement (for enforcement or otherwise), the WP Allowed Claim and the Note. On the Settlement Effective Date, the Swain Landing Parties shall forever release, acquit, and forever discharge each of the WP Released Parties from any and all claims and liability. On the Settlement Effective Date, and except as provided herein, the WP Claimants waive and release any claim or liability they may have against Swain Landing and Michael Postal relating to the Swain Landing Project or any other matter known—or that reasonably should be known—to any or all of the WP Claimants as of the Settlement Effective Date. For the avoidance of doubt, other than as set forth herein with respect to Swain Landing and Michael Postal, White Pearl and the WP Affiliates do not waive any right, claim, interest or cause of action against anyone including, but not limited to, any non-settling Defendant.

9. No Admission of Liability. Each of the Parties acknowledge this Settlement Agreement is a compromise and that the Settlement Payment made hereunder is not intended to be construed as an admission of any liability by either Party. For the avoidance of doubt, nothing in this Settlement Agreement, nor any negotiations, statements, communications, conduct, or consideration associated with it, shall constitute or be construed as any admission, concession, implication, or suggestion that any allegation, factual assertion, claim, cause of action, legal theory, or requested relief pleaded in the Complaint, as amended, lacked merit.

10. No Setoff/No Reduction of Claims: No non-settling defendant shall be entitled to assert this Settlement Agreement, the Settlement Payment, or any release herein as a basis for any credit, reduction, offset, or limitation of damages.

11. Prohibition on Use of Settlement by Non-Settling Defendants: The Parties agree that this Settlement Agreement, its terms, and the consideration exchanged may not be cited, referenced, introduced, or offered in evidence by any non-settling defendant for any purpose.

12. Non-Waiver of Legal or Factual Positions: Nothing in this Settlement Agreement constitutes any waiver, modification, abandonment, or alteration of Plaintiffs' factual allegations, legal theories, or positions asserted in the Complaint, as amended, *provided, however*, this Section 12 ought not be construed to diminish or abrogate the scope of the releases set forth herein.

13. Entire Agreement. This Settlement Agreement constitutes the complete understanding between the Parties and it cannot be altered, amended, or modified in any respect, except by a writing duly executed by all Parties.

14. Voluntary Act. Each of the Parties hereby warrant, with respect to itself only, that it is authorized and empowered to execute this Settlement Agreement, *except* Swain Landing acknowledges such authority and empowerment is expressly contingent upon judicial approval. The Parties acknowledge that they have read this Settlement Agreement in its entirety, fully understood its terms, and voluntarily accepted the terms set forth herein. Further, each Party acknowledges that it has had an opportunity to consult with legal counsel and any other advisers of its choice with respect to the terms of this Settlement Agreement and it is signing this Settlement Agreement of its own free will.

15. Attorney Fees. Each Party shall bear its own attorneys' fees and costs relating to the negotiation and execution of this Settlement Agreement. However, if either Party must commence an action to enforce the terms of this Settlement Agreement, the substantially prevailing Party shall be entitled to an award, in addition to any other claims or damages, of its reasonable costs and expenses including attorneys' fees, in connection with said enforcement action.

16. No Assignment. Each Party hereby represents and warrants to the other Party that it has made no assignment, and hereafter will make no assignment of any claim, cause in action, right of action, or any other right released pursuant to this Settlement Agreement, *except* the Parties acknowledge any such rights belonging to Swain Landing have vested, by operation of law, in Swain Landing's bankruptcy estate.

17. Execution in Counterparts. It is understood and agreed that this Settlement Agreement may be executed in identical counterparts and may be transmitted by email or facsimile, each of which shall be deemed an original for all purposes.

18. No Future Bankruptcies Absent Authorization. Notwithstanding any provision of this Settlement Agreement, and apart from the existing DC Bankruptcy Case, Swain Landing may not seek bankruptcy protection in any court while White Pearl holds a membership interest in Swain Landing, absent White Pearl's express written authorization.

19. Operative Law. This Settlement Agreement shall be governed by the laws of the State of Maryland, and to the extent applicable, the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure.

**IN WITNESS WHEREOF**, the Parties have caused this Settlement Agreement to be executed as of June 8th, 2026.

**For White Pearl**:

By: ______________________________
E. Douglas Grindstaff II

**For The Swain Landing Parties**:

DocuSigned by:
Michael Postal
By: ______________________________
4A51F78314AD465...
Michael Postal

_____________________________________________

**Exhibit 1: NOTE**

$585,000.00 District of Columbia
September __, 2026

# PROMISSORY NOTE

FOR VALUE RECEIVED, **SWAIN LANDING LA PLATA JC, LLC**, a Maryland limited liability company ("Borrower"), promises to pay to the order of **WHITE PEARL, LLC**, a Delaware limited liability company ("Lender"), via immediately available funds, the principal sum of Five Hundred Eighty Five Thousand Dollars and No Cents ($585,000.00) ("Loan"), with interest thereon at the rate or rates specified below until paid in full, and any and all other sums which may be owing to Lender by Borrower pursuant to this promissory note ("Note"), in accordance with the provisions set forth herein.

**1) PRIMARY BUSINESS TERMS**

a) *Maturity Date*. The final and absolute maturity date of this Note ("Maturity Date") shall be **January 31, 2033**.

b) *Interest Rate*. From February 1, 2026 until all sums owed on this Note are paid in full, interest shall accrue on the principal balance outstanding under this Note at the rate of six percent (6.0%) per annum. Interest shall be calculated on the basis of a 360 days per year factor.

c) *Payment*. Borrower shall repay this Note as follows:

On the Maturity Date, Borrower shall pay in full all sums due under this Note, including principal, interest, charges and fees. Borrower may, in its sole and absolute discretion, prepay part or all of this Note at any time without penalty.

All payments made under this Note shall be made by such form of check, draft or other instrument as may be approved from time to time by Lender, and shall be payable in lawful money of the United States of America, which shall be legal tender in payment of all debts and dues, public and private, at the time of payment. All payments made under this Note shall be applied first to late charges or other sums owed to Lender, next to accrued interest, and then to principal, or in such other order or proportion as Lender, in Lender's sole discretion, may elect from time to time.

d) *Late Charge*. If any payment due under this Note is not received by Lender within five (5) calendar days after its due date, Borrower shall pay a late charge equal to the lesser of (i) ten percent (10%) of the amount then due; (ii) Fifty Eight Thousand Five Hundred Dollars and No Cents ($58,500.00); or (iii) the maximum sum permitted by applicable law, inclusive of those laws governing matters of usury, for each month or portion thereof that such payment remains outstanding.

**2) SECURITY**

a) Borrower hereby pledges and grants to Lender a valid, continuing, first-priority security interest, subject only to the Carve Out, in all of its right, title, and interest in and to the Collateral (as such term is defined below), to secure the prompt payment and performance of Borrower's present and future debts, obligations, and liabilities of whatever nature to Lender, including, without limitation, all obligations of Borrower arising from or relating to the Loan. Borrower hereby agrees to execute and deliver such further documentation and take such further action as Lender may request in order to enforce and protect the aforesaid security interest. Borrower hereby authorizes Lender to notify any account debtor on any accounts that are the subject of Lender's security interest hereunder of the existence of Lender's interest and further, such notices may direct that after an Event of Default, any further payments shall be made directly to Lender. Borrower authorizes Lender to collect and enforce any of the Collateral, with the proceeds to be applied to the indebtedness outstanding hereunder, without liability to Borrower in connection with any such collection or enforcement and provided Borrower shall pay enforcement costs incurred by Lender. Borrower hereby authorizes Lender to file one or more financing statements or continuation statements in

respect thereof, and amendments thereto, relating to all or any part of the Collateral without the signature of any Borrower where permitted by law.

b) "***Collateral***" shall mean all of Borrower's right, title and interest in and to the following (whether now existing or hereafter arising or acquired, wherever located):

i. All present and future income, accounts, accounts receivable, rights to payment and all forms of consideration and obligations owing to Borrower or in which Borrower may have any interest, however created or arising and whether or not earned by performance;
ii. All deposit accounts, securities, securities entitlements, securities accounts, investment property and certificates of deposit now owned or hereafter acquired;
iii. All other real and personal property now owned or hereafter acquired, including, and all accessories, accessions, replacements, substitutions, additions, and improvements to any of the foregoing, wherever located;
iv. All right, title, interest, recoveries (including property recovered or the value thereof) and proceeds, in and from all state and federal based claims and causes of actions, including all avoidance actions and related recoveries under chapter 5 of title 11 of the United States Code annotated §101, *et seq.* currently pending or filed in the future, including from the litigation styled *Swain Landing LaPlata JC LLC v. Catherine Swain, at al*., Adversary Proceeding No. 10013 filed in connection with the bankruptcy case of *In re Swain LaPlata JC, LLC*, Bankruptcy Case No. 25-00184, in the United States Bankruptcy Court for the District of Columbia;
v. All other contract rights and general intangibles now owned or hereafter acquired, including, without limitation, income tax refunds, payments of insurance and rights to payment of any kind; and
vi. All proceeds, products, offspring, rents, profits, income, payments, distributions, substitutions, replacements, recoveries, supporting obligations, insurance proceeds, claims, awards, and other rights arising from or relating to any of the foregoing, whether now existing or hereafter arising, including all cash and non-cash proceeds thereof.

Notwithstanding the foregoing, the first-priority security interest granted herein shall be subordinate and subject to the "Carve Out" as defined in Section 3 of that certain Swain Settlement Agreement, dated as of June 8, 2026, between Borrower and Lender.

c) Lender shall have such rights and remedies with respect to the Collateral as are available under the provisions of the Uniform Commercial Code, in addition to all other rights and remedies existing at law, in equity, or by statute or provided in this Note, which may be exercised without notice to, or consent by, Borrower.

d) The security interest granted herein constitutes, upon attachment and perfection, a valid and enforceable first priority security interest in the Collateral, subject only to the Carve Out expressly described herein. Borrower shall not create, incur, assume or permit any lien, security interest or encumbrance on the Collateral other than the Carve Out without the prior written consent of Lender.

**3) DEFAULT AND REMEDIES**

a. *Events of Default*. Each of the following shall constitute an event of default under this Note ("Event of Default"):

i. A default in the payment of any sum due under this Note.

ii. A default under any confirmed plan of reorganization governing the affairs of Borrower.

iii. Borrower becomes unable to pay its debts as they generally become due or Borrower suspends or ceases operations in the normal course.

iv. Borrower fails to deliver to Lender the financial statements required pursuant to Section 4(e) contained herein and such failure remains uncured for a period of ten (10) business days following delivery of notice of said failure, in writing, to Borrower.

v. The occurrence of any of the following events: (1) the filing by any Borrower of a voluntary petition in bankruptcy, a petition for reorganization, arrangement or other relief under the United States Bankruptcy Act, or a voluntary petition for the appointment of a receiver or comparable relief from creditors under the laws of any state, or the making by any Borrower of an assignment of all or substantially all of its assets for the benefit of creditors; or (2) the adjudication of any Borrower as bankrupt or insolvent, or the appointment of a receiver of all or substantially all of any Borrower's assets, if such adjudication, appointment or order is made on a petition filed against any Borrower and is not, within ninety (90) days after it is made, vacated or stayed on appeal or otherwise, or if any Borrower, by any action or failure to act, signifies its approval or consent to such appointment, order or petition.

b. *Remedies*. Upon the occurrence of an Event of Default, in addition to all other rights and remedies available to Lender under applicable law, Lender shall have the following rights and remedies:

i. Acceleration. Lender, in Lender's sole discretion and without notice or demand, may declare the entire principal balance outstanding under this Note, plus accrued interest and all other sums owed under this Note, immediately due and payable.

ii. Default Interest Rate. Lender, in Lender's sole discretion and without notice or demand, may raise the rate of interest accruing on the principal balance outstanding under this Note to the lesser of seven and one-half percent (7.5%) per annum or the maximum rate allowed by applicable law, independent of whether the holder elects to accelerate the principal balance outstanding under this Note.

c. *Expenses of Collection and Attorneys' Fees*. If this Note is referred to an attorney for collection, whether or not judgment has been confessed or suit has been filed, Borrower shall pay all of Lender's actual costs, fees and expenses, including actual attorneys' fees, resulting from such referral.

**4) MISCELLANEOUS**

a. *Assignability*. This Note may be assigned by Lender or any holder at any time or from time to time. This Note shall inure to the benefit of and be enforceable by Lender and Lender's successors and assigns and any other person to whom Lender or any holder may grant an interest in Borrower's obligations under this Note, and shall be binding and enforceable against Borrower and Borrower's personal representatives, successors and assigns.

b. *Negotiable Instrument*. Borrower agrees that this Note shall be deemed a negotiable instrument even if this Note would not qualify under applicable law, absent this Section, as a negotiable instrument.

c. *Choice of Law*. This Note shall be governed by the laws of the District of Columbia.

d. *Unconditional Obligations*. Borrower's obligations under this Note shall be the absolute and unconditional duty and obligation of Borrower and shall be independent of any rights of set-off, recoupment or counterclaim which Borrower might otherwise have against the holder of this Note, and Borrower shall pay absolutely the payments of principal, interest, fees and expenses required under this Note, free of any deductions and without abatement, diminution or set-off.

e. *Financial Reporting*. Borrower shall deliver to Lender, within ninety (90) days after the end of each fiscal year prior to the Maturity Date, an annual income statement and balance sheet of the Borrower.

f. *Severability*. In the event that any provision of this Note conflicts with applicable law, such conflict shall not affect other provisions of this Note which can be given effect without the conflicting provision, and to this end the provisions of this Note are declared to be severable.

g. *Tense; Gender; Section Headings*. In this Note, the singular includes the plural and *vice versa*; and each reference to any gender also applies to any other gender. The section headings are for convenience only and are not part of this Note.

h. *Time*. Time is of the essence of this Note.

i. *Amendments and Waivers*. No amendment, modification or waiver of any provision of this Note shall be effective unless set forth in a writing signed by Lender, and any such waiver shall be effective only in the specific instance and for the specific purpose for which it is given.

j. *Notices*. Any notice, request, consent or communication under this Note shall be effective only if it is in writing and (i) personally delivered, (ii) sent by certified or registered mail, return receipt requested, postage prepaid, (iii) sent by a nationally recognized overnight delivery service, with delivery confirmed, or (iv) sent by email, with receipt confirmed, addressed as follows:

If to the Lender:

E Douglas Grindstaff II
3721 Hobbs Rd
Nashville. TN 37215
Email: douglas.grindstaff@mannheimllc.com

If to the Borrower:

Michael Postal
1801 16th Street, NW
#606
Washington, DC 20009
Email: MikePostal@TenacityGroup.com

**5) CONSENTS AND WAIVERS**

a. *Waiver of Presentment, Etc*. Borrower waives presentment, notice of dishonor and protest.

b. *Consent to Extensions, Etc*. From time to time, without affecting any of the obligations of Borrower under this Note, without giving notice to or obtaining the consent of Borrower, and without liability on the part of Lender, Lender may, at Lender's option, extend the maturity of this Note, or any payment due under this Note, reduce the amount of any payments under this Note, release anyone liable on any amount due under this Note, accept a renewal of this Note, modify the terms of payment of any amounts due under this Note, join in any extension or subordination agreement, release any security for the Note, or take or release any other or additional security.

c. *Jury Trial Waiver*. Borrower and Lender (by acceptance of this Note) jointly waive trial by jury in any action or proceeding to which Borrower and any holder of this Note may be parties, arising out of or in any way pertaining to this Note or any of the other Loan Documents. It is agreed and understood that this waiver constitutes a waiver of trial by jury of all claims against all parties to such actions or proceedings,

including claims against parties who are not parties to this Note. This waiver is knowingly, willingly and voluntarily made by Borrower, and Borrower hereby represents that no representations of fact or opinion have been made by any individual to induce this waiver of trial by jury or to in any way modify or nullify its effect. Borrower further represents that it has been represented in the signing of this Note and in the making of this waiver by independent legal counsel, selected of its own free will, and that it has had the opportunity to discuss this waiver with counsel.

IN WITNESS WHEREOF, Borrower has duly executed this Note under seal as of the date first written above.

| WITNESS/ATTEST: | **BORROWER:** |
|---|---|
| | SWAIN LANDING LA PLATA JC, LLC |
| ______________________________ | By: ______________________________ |
| | Name: Michael Postal |
| | Its: Authorized Agent |